MELISSA D. KAMENS et al., Respondents, v UTICA MUTUAL INSURANCE COMPANY et al., Appellants. (Appeal No. 1.) [776 NYS2d 671]—

Appeals from an order of the Supreme Court, Monroe County (Thomas A. Stander, J.), entered September 5, 2002. The order, insofar as appealed from, denied defendants' motion and cross motion for summary judgment dismissing the complaint and granted in part plaintiffs' cross motion for summary judgment.

It is hereby ordered that the order insofar as appealed from be and the same hereby is reversed on the law without costs, defendants' motion and cross motion are granted, the complaint is dismissed, and plaintiffs' cross motion is denied in its entirety.

Memorandum: Plaintiffs, the adult children of Charles G. and Susan B. Dickinson, commenced this action against defendants, Utica Mutual Insurance Company (Utica Mutual) and Violetta Q. Dickinson, individually, the surviving spouse of Charles. Plaintiffs contest Violetta's right to receive certain annuity payments made or to be made by Utica Mutual, asserting their own entitlement to those payments. As against Utica Mutual, plaintiffs allege breach of contract and tortious interference with contractual rights. As against Violetta, plaintiffs allege unjust enrichment and constructive trust, money had and received, and conversion. Both defendants appeal from those parts of an order denying the motion of Utica Mutual and cross motion of Violetta for summary judgment dismissing the complaint, and instead granting that part of the cross motion of plaintiffs for summary judgment on their cause of action for breach of contract against Utica Mutual (appeal No. 1). Additionally, Violetta, as personal representative of the estate of Charles, appeals from that part of a second order granting plaintiffs summary judgment dismissing the estate's affirmative defenses and counterclaim (appeal No. 2). Defendants contend that plaintiffs lack standing to maintain this action as third-party beneficiaries, and that plaintiffs in any event cannot now receive the annuity payments because of the failure of an essential condition precedent.

This case involves the interpretation of two agreements. The first, a "Settlement Agreement" (agreement) dated September 1, 1983, was entered into by Charles and Susan, then married, and Utica Mutual as the insurer of a tortfeasor who had been involved in an accident with Charles. The agreement compromised the claim of Charles for damages incurred as a result of the accident, which left him a quadriplegic and unable to speak, as well as the derivative claim of Susan. The agreement further

provided for various payments to Charles, Susan, and plaintiffs. The agreement provided for annuity payments of $3,000 per month to Charles for life or, in the event of his death prior to September 1, 2013, to Susan or plaintiffs through that date. It further provided for $700,000 in deferred lump sum payments to Charles or, in the event of his death, to Susan or plaintiffs (of which we are directly concerned only with a $300,000 payment that came due on September 1, 2003).

With respect to the monthly payments, the agreement provided: "In the event of the death of Charles G. Dickinson within 30 years from the date of this Agreement (i.e., Sept. 1, 2013), monthly payments up to and including the Sept. 1, 2013 payment, shall be made in the following order: to Susan B. Dickinson if she is then living; if not, to Melissa, Amy and Sarah Dickinson, in equal shares, or their survivor (s); otherwise to the estate of Charles G. Dickinson."

With respect to the payment due September 1, 2003, the agreement provided: "[T]he sum of Three Hundred Thousand Dollars ($300,000) will be paid in the order named to Charles G. Dickinson if he is then living; otherwise to Susan B. Dickinson if she is then living; otherwise to Melissa, Amy and Sarah Dickinson, in equal shares, or the survivor (s); otherwise to the estate of Charles G. Dickinson."

The second agreement is a stipulation of settlement placed on the record on September 30, 1985 in an action for the divorce of Charles and Susan. That divorce stipulation (stipulation), which has the same legal effect as a written contract (see *Meinwald v Meinwald,* 56 AD2d 565 [1977]; see generally CPLR 2104; *Hallock v State of New York,* 64 NY2d 224, 229 [1984]), provided for distribution of the marital estate, including the annuity payments that are the subject of this action. Pursuant to the stipulation, Susan received the contents of the marital residence; the exclusive use and occupancy of the marital residence; and the sum of $100,000 "as equitable distribution to [Susan] and in satisfaction of her claim for maintenance." With regard to the annuity payments that are the subject of this action, the stipulation provided: "[Susan] will execute any and all forms necessary to remove herself as primary contingent beneficiary on an annuity owned by Utica Mutual Life Insurance Company implementing a structured settlement that the parties received as a result of injuries suffered by [Charles]."

The sole provision of the stipulation that explicitly benefitted plaintiffs required that they be named as primary beneficiaries of an insurance policy on Charles's life. However, the stipulation included the following discussion concerning aborted nego-

tiations between the divorcing couple for the elimination of plaintiffs' contingent interest in the annuity:

"[CHARLES'S COUNSEL]: Is there anything you can think of, [Charles], that has not been mentioned here? (Whereupon a slip was handed to the court [because Charles was unable to speak, he communicated with the court and counsel by means of a device that produced typed messages]).

"THE COURT [evidently reading]: The $5,000 account for the girls [plaintiffs].

"[CHARLES'S COUNSEL, speaking primarily to Charles, but for the edification of the court as well]: Remember that I told you in the hall that [Susan's counsel] and I tried to reach an accommodation so that the girls would not be alternate beneficiaries under the Utica Mutual contract[?] When I discussed this matter with you yesterday and discussed this with the Utica Mutual people, I felt that the only way we could legitimately remove their interest because they're minors is to buy it out and my suggestion was we would pay them anywhere from $3,000 to $5,000. You agreed to $5,000 and set up separate accounts for each one of the girls. Since the Judge has indicated that he has no jurisdiction over the girls, he has no jurisdiction over that contract as far that they are concerned. Consequently, that is not an issue at that time. All right? So, we don't have to take that into consideration. Understand?

"THE COURT: Yes."

Charles married Violetta on July 12, 1990. They had one child, Dianne Dickinson. In August 1998 Charles filed with Utica Mutual an "Annuity Service Request" naming Violetta as the primary beneficiary of the annuity payments and Dianne as the contingent beneficiary. That change of beneficiary request was approved by Utica Mutual on August 12, 1998. Charles died on August 29, 1999. Thereafter, annuity payments were made by Utica Mutual to Violetta pursuant to the August 1998 change of beneficiary request. Susan, Violetta, Dianne and plaintiffs all survive Charles. By this action, plaintiffs seek to recover all annuity payments that have and will come due from the time of Charles's death until September 1, 2013.

With respect to the contested issue of plaintiffs' standing, we conclude that plaintiffs have standing to maintain this action as intended third-party beneficiaries under the agreement, which gave plaintiffs rights as successor or contingent beneficiaries of certain monthly and deferred lump sum annuity payments coming due after the deaths of both Charles and Susan. We conclude, however, that plaintiffs are not third-party beneficiaries of the stipulation, except with respect to its provision requiring that

plaintiffs be named as beneficiaries of Charles's life insurance. In other words, plaintiffs are not third-party beneficiaries with respect to the annuity payments that Susan gave up by the stipulation.

With respect to the substantive property issues, however, we conclude that plaintiffs lack the presently enjoyable, accelerated, and substantially enlarged interest in the annuity payments that plaintiffs seek and that Supreme Court conferred upon them. We conclude that plaintiffs continue to have a status as successor or contingent beneficiaries under the agreement, but only to the extent of payments coming due after the occurrence of the specified dual contingencies, i.e., the deaths of both of plaintiffs' parents, Charles and Susan, prior to September 1, 2013. With regard to those payments coming due between the date of Charles's death on August 29, 1999 and the possible future date of Susan's death before September 1, 2013, we conclude that plaintiffs lack any present or otherwise vested interest. As we read the agreement, it created three distinct ownership interests, some vested and some contingent, in the annuity payments. Charles owned and was to receive all payments coming due during his lifetime. Susan was to own and receive any payments coming due after the death of Charles, provided that she was still living at the time of payment. Plaintiffs were to own and are to receive any payments coming due after the deaths of both Charles and Susan.

Although Susan gave up her contingent interest in the annuity payments by the stipulation, the contingent interests of plaintiffs were not affected thereby. It is axiomatic that, when a husband and wife stipulate to a settlement of their divorce action, each gives up something to the other. Thus, the stipulation provided for Susan's receipt of over $100,000 in marital assets together with the exclusive possession of the marital residence. In exchange, Susan conveyed to Charles her contingent interest in the annuity, meaning her right to receive such payments as otherwise would have been payable to her in the event of Charles's death. In doing so, Susan unequivocally agreed to "remove herself as the primary beneficiary under the annuity," an obligation described in the subsequent divorce decision as one of "divest[iture]." That divestiture by Susan had the effect of unifying Charles's then present and vested interest as the initial annuitant and Susan's interest as first contingent beneficiary (cf. *Silber v Silber,* 99 NY2d 395, 404 [2003], *cert denied* — US —, 124 S Ct 77 [2003]). Consequently, the divestiture made Charles the sole owner of the annuity payments coming due during his lifetime and/or that of Susan, with a corresponding

unrestricted power to name or appoint primary beneficiaries of such payments coming due after his death, or, failing that, to have the payments distributed as part of his estate. The divestiture thus had the effect of making Charles's estate the primary beneficiary of payments coming due after Charles's death and prior to Susan's death (see *Curley v Giltrop*, 68 NY2d 651, 653-654 [1986], *rearg denied* 68 NY2d 754 [1986]; *Matter of Hayman-Chaffey v Landy*, 267 AD2d 142,143 [1999], *lv dismissed in part and denied in part* 94 NY2d 932 [2000]; *Mohawk Airlines v Peach*, 61 AD2d 346, 349-351 [1978], *lvs denied* 44 NY2d 645, 838 [1978]; *Teachers Ins. & Annuity Assn. of Am. v Rogers*, 41 AD2d 1020, 1021 [1973]).

Plaintiffs' contingent interests in the annuity payments (i.e., in those payments, if any, coming due after the deaths of both Charles and Susan) remain unaffected by the stipulation and will vest upon Susan's death prior to September 1, 2013. We reach that conclusion based on three considerations indicative of the intent of the divorcing couple in entering into their stipulation. First, the stipulation requires Susan to give up her interest as primary beneficiary of the annuity without making any reference to any acceleration of plaintiffs' interest as contingent beneficiaries. Second, the only on-the-record discussion of plaintiffs' interest as "alternative beneficiaries" in the annuity relates to the divorcing couple's aborted negotiations for the "legitimate[ ] removal" or termination of that interest in exchange for a $5,000 payment for the benefit of each plaintiff. That would have been a nominal buyout figure in view of the fact that the unmatured deferred lump sums and monthly payments then totaled more than $1.6 million. Such negotiations are thus totally inconsistent with any intention to accelerate and expand plaintiffs' interest by deleting the condition that both Charles and Susan die before plaintiffs might receive any annuity payments. Third, the stipulation required that plaintiffs be named as beneficiaries of a different marital asset, Charles's life insurance policy, while imposing no similar requirement with regard to the annuity, thereby establishing that the divorcing parties knew how to benefit plaintiffs when it was their intent to do so.

Thus, contrary to the conclusion of the court, the agreement and stipulation, read together, do not accord a present or accelerated interest in the annuity payments to plaintiffs. We cannot conclude that the divestiture by Susan of her interest as primary beneficiary qualifies as a "renunciation" under EPTL 2-1.11. Instead, in expressly divesting herself of her interest, Susan conveyed her lifetime benefit to Charles, the only other

party to the stipulation, in exchange for other marital property and benefits. Inasmuch as Susan received the consideration that she had bargained for, she did not retain the right to direct that the surrendered payments be made to plaintiffs, whether by means of a "renunciation" or any other legal device (*cf. Curley,* 68 NY2d at 654). The conveyance of an interest in property is a concept distinct from a "renunciation" of such interest under EPTL 2-1.11, and what one conveys (or has conveyed) one plainly cannot "renounce."

By the explicit terms of the agreement, plaintiffs are entitled to succeed to an interest in the annuity payments, but only if Susan dies before September 1, 2013 (*cf. Doyle v Sullivan,* 176 AD2d 55, 58-59 [1992], citing *In re Estate of Seitz,* 426 Mich 630, 640, 397 NW2d 162, 166 [1986]). There is thus no basis for plaintiffs' claim of entitlement to any present or otherwise vested interest in the annuity payments as of the date of Charles's death or indeed as of any date prior to the death of Susan. Instead, plaintiffs' interest under the agreement continues to be that of contingent beneficiaries, and one of the contingencies, Susan's death before September 1, 2013, has not yet occurred and may never occur.

In concluding that plaintiffs have an accelerated and present interest in all annuity payments since the death of Charles, the dissent relies upon a provision of the agreement requiring that any modification thereof be by a writing signed by all of the parties thereto. We emphasize that we are not enforcing any unilateral modification of the agreement by Charles; rather, we are effectuating the bilateral divorce stipulation, whereby Susan conveyed to Charles her interest in payments made under the agreement. It is the dissent that would modify the agreement by reading out of it the unequivocal condition that plaintiffs survive Susan before succeeding to any interest in payments made following the death of Charles.

In appeal No. 1, we therefore reverse the order insofar as appealed from, grant the motion of Utica Mutual and the cross motion of Violetta, dismiss the complaint, and deny plaintiffs' cross motion in its entirety. In appeal No. 2, we reverse the order insofar as appealed from, vacate the fifth ordering paragraph and, in view of our determination in appeal No. 1, dismiss the complaint against Violetta in her representative capacity.

All concur except Pigott, Jr., P.J., and Hayes, J., who dissent and vote to affirm in the following memorandum.

Pigott, Jr., P.J., and Hayes, J. (dissenting). We respectfully dissent and would affirm the orders in appeal Nos. 1 and 2. At the outset, we note that we are mindful of the competing equities

presented by the parties on this appeal. Nonetheless, in our view, Supreme Court properly granted that part of plaintiffs' cross motion for summary judgment on the first cause of action.

We agree, for the most part, with the majority's recitation of the facts. However, we add one fact that we believe is the linchpin of this case. Section 8 (h) of the "Settlement Agreement" (agreement) states: "*Amendment.* This Agreement shall not be modified or amended *except by an instrument in writing signed by all of the parties*" (emphasis added).

We also note that, in September 1990, shortly after Charles G. Dickinson and defendant Violetta Q. Dickinson married, Charles attempted to change the primary beneficiary designation for the monthly and lump sum payments due under the agreement to Violetta, and also attempted to change the contingent beneficiary designation to any children that they might have together. That application was rejected by defendant Utica Mutual Insurance Company (Utica Mutual).

We agree with the majority that plaintiffs have standing to maintain this action (*see Devlin v United States*, 352 F3d 525, 538 [2003], citing 4 Couch on Insurance 3d § 58:15). Curiously, however, while the majority concludes that plaintiffs have standing based on their status as successor or contingent beneficiaries of the annuity payments, i.e., they possess a vested interest in the annuity, it nonetheless concludes that plaintiffs are not entitled to the proceeds. We disagree and conclude that plaintiffs are entitled to the annuity payments that have and will come due from the time of Charles's death until September 1, 2013.

An owner of an annuity, like an insured under a life insurance policy, may retain or reserve certain ownership rights, including the right to change beneficiaries without restriction (*see generally Davis v Modern Indus. Bank*, 279 NY 405, 409 [1939]). Where that right is reserved, the designated beneficiary obtains no vested interest in the proceeds of the policy (*see id.*; *see also Silverman v Levy*, 75 NYS2d 797, 801 [1947], *affd* 273 App Div 952 [1948], *affd* 298 NY 778 [1948]). Moreover, under those circumstances, the insured may change the beneficiary at will and thereby divest a prior beneficiary of all interest in the proceeds of the policy without the permission—or indeed, even the knowledge—of the beneficiary. No one disputes those well-settled principles.

However, in our view, those principles cannot prevail where, as here, the owner of the annuity in question, Charles, has specifically contracted away certain of his ownership rights, specifically, the right to unilaterally change beneficiaries pursuant to the agreement. In other words, once Charles signed the

agreement, he made his ownership rights in the annuity subject to section 8 (h) of the agreement, which provides that any modification of the agreement, including the annuity provisions, must be in writing and signed by all parties. Thus, Charles never possessed unfettered control to change the beneficiary designation as he saw fit (*cf. Provident Mut. Life Ins. Co. v Vergara*, 1995 WL 571874, *2, 1995 US Dist LEXIS 14028, *5 [SD NY, Sept. 27, 1995] [citing *Davis*, 279 NY at 412-414]). It is telling, indeed, that Utica Mutual denied the first attempt by Charles to change the primary beneficiary unilaterally to his second wife, Violetta, presumably because it, too, recognized that he was prohibited from doing so by the agreement.

We submit that the facts presented on this appeal are analogous to those in cases involving the interplay between life insurance policies and other types of contracts, particularly separation agreements agreed to in the context of divorce actions (*see e.g. Rogers v Rogers*, 63 NY2d 582, 586-587 [1984] [promise in a separation agreement to maintain an insurance policy designating a spouse as beneficiary vests in the spouse an equitable interest in the policy specified, and that spouse will prevail over a person in whose favor the decedent executed a change in beneficiary form]; *Simonds v Simonds*, 45 NY2d 233, 240 [1978]; *Neenan v ITT Hartford*, 256 AD2d 1247 [1998] [settlement agreement divested wife of authority to change the beneficiary on ex-husband's life insurance policy]; *McCourt v McCourt*, 122 AD2d 539, 540 [1986], *lv denied* 68 NY2d 611 [1986], *cert denied* 480 US 933 [1987] [unilateral modification of the beneficiaries on decedent's life insurance policy breached a separation agreement whereby decedent agreed to refrain from making such change]). In our view, plaintiffs' interest in the annuity cannot be defeated without the consent of plaintiffs' mother, Susan B. Dickinson, who, pursuant to the agreement, must consent in writing to any change in plaintiffs' beneficiary status and interest. By virtue of the restriction set forth in section 8 (h) of the agreement, plaintiffs continue to have a vested equitable interest in the annuity proceeds superior to any claim of Charles's second wife, Violetta. Thus, in our view, plaintiffs are entitled to the annuity payments that have and will come due from the time of Charles's death until September 1, 2013.

We therefore would affirm the orders in both appeals. Present—Pigott, Jr., P.J., Wisner, Kehoe, Lawton and Hayes, JJ.