[829 NE2d 292, 796 NYS2d 328]

MELISSA DICKINSON KAMENS et al., Appellants, v UTICA MUTUAL INSURANCE COMPANY et al., Respondents. (Appeal No. 1.)

MELISSA DICKINSON KAMENS et al., Appellants, v UTICA MUTUAL INSURANCE COMPANY et al., Respondents. (Appeal No. 2.)

Argued February 17, 2005; decided March 31, 2005

### POINTS OF COUNSEL

*Underberg & Kessler, LLP,* Rochester (*Paul V. Nunes* and *Ronald G. Hull* of counsel), for appellants. I. The purported change of beneficiary was ineffectual and void. (*Altman v Altman,* 246 AD2d 565; *McCarthy v Aetna Life Ins. Co.,* 92 NY2d 436; *John Hancock Mut. Life Ins. Co. v McManus,* 247 AD2d 513.) II. Susan Dickinson renounced her status as primary beneficiary of the annuity. (*John Hancock Mut. Life Ins. Co. v McManus,* 247 AD2d 513; *Silber v Silber,* 99 NY2d 395; *Curley v Giltrop,* 68 NY2d 651; *Matter of Hayman-Chaffey v Landy,* 267 AD2d 142; *Teachers Ins. & Annuity Assn. of Am. v Rogers,* 41 AD2d 1020; *Mohawk Airlines v Peach,* 61 AD2d 346, 44 NY2d 645; *Flaherty v McCall,* 262 AD2d 890; *Simonds v Simonds,* 45 NY2d 233.) III. The theory of conveyance also fails because of the restrictions in the structured settlement agreement and public policy. (*Allstate Ins. Co. v American Bankers Ins. Co. of Fla.,* 882 F2d 856; *Singer Asset Fin. Co. v Bachus,* 294 AD2d 818; *Reed v Tompkins Terrace,* 209 AD2d 595; *Liberty Life Assur. Co. of Boston v Stone St. Capital, Inc.,* 93 F Supp 2d 630; *CGU Life Ins. Co. v Metropolitan Mtge. & Sec. Co., Inc.,* 131 F Supp 2d 670.) IV. The death of Susan Dickinson is not an "indispensable condition" to the vesting of plaintiffs' rights. (*Doyle v Sullivan,* 176 AD2d 55; *Matter of Dominquez,* 143 Misc 2d 1010; *Matter of Ginsberg,* 142 Misc 2d 192; *Massachusetts Mut. Life Ins. Co. v Thorpe,* 260 AD2d 706; *Flaherty v McCall,* 262 AD2d 890; *Simonds v Simonds,* 45 NY2d 233; *Rogers v Rogers,* 63 NY2d 582; *McCourt v McCourt,* 122 AD2d 539.) V. Plaintiffs have standing. (*Strianese v Metropolitan Life Ins. Co.,* 221 App Div 81; *John Hancock Mut. Life Ins. Co. v McManus,* 247 AD2d 513; *Matter of International Assn. of Bridge, Structural & Iron Workers, Local Union No. 6, AFL-CIO v State of New York,* 280 AD2d 713; *Sardanis v Sumitomo Corp.,* 282 AD2d 322.)

*Goldberg Segalla LLP,* Buffalo (*Susan E. Van Gelder* and *Al-*

*bert J. D'Aquino* of counsel), for Utica Mutual Insurance Company, respondent. I. Charles Dickinson became the sole owner of the subject annuity payments with unrestricted power to designate beneficiaries following Susan Dickinson's divestiture. (*Curley v Giltrop,* 68 NY2d 651; *Mohawk Airlines v Peach,* 61 AD2d 346; *Silber v Silber,* 99 NY2d 395.) II. Appellants do not have a vested interest in the structured settlement agreement because the indispensable condition precedent has not occurred. (*Drew v Prudential Ins. Co. of Am.,* 224 AD2d 1036; *Doyle v Sullivan,* 176 AD2d 55; *Silber v Silber,* 99 NY2d 395.) III. There was no renunciation under EPTL 2-1.11. (*Matter of Chofeng Lin Lee,* 155 Misc 2d 689; *Matter of Ginsberg,* 142 Misc 2d 192.) IV. There is no legal or factual support for the imposition of a constructive trust. (*Simonds v Simonds,* 45 NY2d 233.) V. Appellants currently do not have standing to maintain this action. (*Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761; *Truty v Federal Bakers Supply Corp.,* 217 AD2d 951; *Matter of International Assn. of Bridge, Structural & Ornamental Ironworkers, Local Union No. 6, AFL-CIO v State of New York,* 280 AD2d 713; *Salesky v Hat Corp. of Am.,* 20 AD2d 114; *Silber v Silber,* 99 NY2d 395; *Doyle v Sullivan,* 176 AD2d 55; *Cole v Metropolitan Life Ins. Co.,* 273 AD2d 832; *Roosevelt Islanders for Responsible Southtown Dev. v Roosevelt Is. Operating Corp.,* 291 AD2d 40; *Drake v Drake,* 89 AD2d 207; *Binghamton Masonic Temple v City of Binghamton,* 213 AD2d 742.)

*Shapiro, Rosenbaum, Liebschutz & Nelson, LLP,* Rochester (*Warren B. Rosenbaum* of counsel), for Violetta Q. Dickinson, respondent. I. The postdivorce change of beneficiary was consistent and complied with both the settlement agreement and stipulation. (*Niagara County Sewer Dist. No. 1 v Town of Niagara,* 214 AD2d 978; *Teitelbaum Holdings v Gold,* 48 NY2d 51; *Meinwald v Meinwald,* 56 AD2d 565; *Hallock v State of New York,* 64 NY2d 224.) II. Susan Dickinson gave up her rights as primary death beneficiary of Charles Dickinson in consideration for transfers to her under the divorce settlement. (*United States v Davis,* 370 US 65; *Matter of Maul,* 176 Misc 170, 262 App Div 941, 287 NY 694.) III. The Appellate Division correctly held that the divestiture of Susan Dickinson's interests had the effect of making Charles Dickinson's estate the primary death beneficiary. (*Silber v Silber,* 99 NY2d 395; *Curley v Giltrop,* 68 NY2d 651; *Matter of Hayman-Chaffey v Landy,* 267 AD2d 142; *Teachers Ins. & Annuity Assn. of Am. v Rogers,* 41 AD2d 1020; *Mohawk Airlines v Peach,* 61 AD2d 346; *Flaherty v McCall,* 262 AD2d 890.) IV. Even if Susan Dickinson's exchange of her right

as primary death beneficiary can be construed as a "renunciation," it does not accelerate the interests of appellants under EPTL 2.1-11 (d) and (f) or otherwise. (*Matter of Chofeng Lin Lee,* 155 Misc 2d 689; *Flaherty v McCall,* 262 AD2d 890; *Curley v Giltrop,* 68 NY2d 651; *Matter of Ginsberg,* 142 Misc 2d 192.) V. Susan Dickinson would not be required to hold the funds in a constructive trust for the benefit of appellants. (*Simonds v Simonds,* 45 NY2d 233; *Rogers v Rogers,* 63 NY2d 582; *Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith,* 85 NY2d 173; *Doyle v Sullivan,* 176 AD2d 55; *Life & Cas. Ins. Co. v Martin,* 603 F Supp 281, *affd sub nom. Webb v Voirol,* 773 F2d 208.) VI. Appellants lack standing to challenge Violetta Dickinson's right to receive agreement proceeds prior to the death of Susan Dickinson. (*Decolator, Cohen & DiPrisco v Lysaght, Lysaght & Kramer,* 304 AD2d 86; *Leavitt-Berner Tanning Corp. v American Home Assur. Co.,* 129 AD2d 199; *Fourth Ocean Putnam Corp. v Interstate Wrecking Co.,* 66 NY2d 38; *Cole v Metropolitan Life Ins. Co.,* 273 AD2d 832; *Binghamton Masonic Temple v City of Binghamton,* 213 AD2d 742.)

## OPINION OF THE COURT

R.S. SMITH, J.

The question here is the effect of an agreement by a wife, as part of a divorce settlement, to "remove herself as primary contingent beneficiary" on an annuity payable to her husband. Plaintiffs, the secondary contingent beneficiaries on the annuity, claim that the wife's removal promoted them to primary status. Defendants claim the agreement allowed the husband to select his own primary contingent beneficiary. We hold that defendants' interpretation is correct.

## Facts and Procedural History

Charles Dickinson was seriously injured in an accident in 1982, and as a result had a claim against parties who were insured by Utica Mutual Insurance Company. The claim was resolved by a settlement agreement dated September 1, 1983 among Utica Mutual, Charles Dickinson and his wife Susan Dickinson.

The agreement provided for a structured settlement, by which Charles was to receive a $447,200 payment immediately; payments of $3,000 per month for the rest of his life; and deferred payments increasing from $50,000 to $300,000, on the 5th, 10th, 15th and 20th anniversaries of the agreement. The agreement

also provided for payments (not involved in the present dispute) to plaintiffs here, the couple's daughters Melissa, Amy and Sarah, when they reached their 18th, 19th, 20th and 21st birthdays.

The present dispute arises from the provisions of the settlement agreement dealing with the contingency that Charles would die within 30 years (by September 1, 2013). In that event, the agreement provided, the $3,000 monthly payments, until September 1, 2013, "shall be made in the following order: to Susan B. Dickinson if she is then living; if not, to Melissa, Amy and Sarah Dickinson, in equal shares, or their survivor(s); otherwise to the estate of Charles G. Dickinson." Identical language was used to describe the recipients of the payments to be made on the 5th, 10th, 15th and 20th anniversaries of the agreement, in the event Charles was no longer living when those payments became due.

Susan later began an action for divorce against Charles, which was settled by a stipulation placed on the record in open court on September 30, 1985. The settlement of the divorce action provided, among other things, for Susan's removal as a contingent beneficiary on the agreement with Utica Mutual. The key language of the stipulation is as follows:

> "[Susan] will execute any and all forms or instruments necessary to remove herself as primary contingent beneficiary on annuity owned by Utica Mutual Life Insurance Company implementing a structured settlement that the parties received as a result of injuries suffered by [Charles]."

Charles remarried, and attempted to substitute his second wife, Violetta Dickinson, for Susan as the primary beneficiary under the Utica Mutual agreement. Although Susan did not sign any forms consenting to the change, Utica Mutual honored the request.

Charles died on August 29, 1999. Utica Mutual then began making the $3,000 monthly payments to Violetta. Plaintiffs sued Utica Mutual and Violetta, claiming that they and not Violetta were entitled to receive the monthly payments and the $300,000 payment due September 1, 2003. Supreme Court later directed that the payments be made into an interest-bearing account pending resolution of the case.

Supreme Court decided the case in plaintiffs' favor. The Appellate Division, with two Justices dissenting, reversed, holding

that Violetta was entitled to the payments in issue. Plaintiffs appeal to this Court as of right, pursuant to CPLR 5601 (a).

Susan died on January 22, 2005, while this appeal was pending. The parties agree that plaintiffs are entitled to all payments due under the Utica Mutual agreement after Susan's death. The monthly payments that became due between Charles's death in 1999 and Susan's death in 2005, and the $300,000 payment due September 1, 2003, remain in issue. We affirm the Appellate Division's holding that those payments should be made to Violetta.

## Discussion

The case turns on the interpretation of the 1985 divorce settlement: What did the parties mean when they agreed that Susan would "execute any and all forms or instruments necessary to remove herself as primary contingent beneficiary"?

Plaintiffs argue that Susan was agreeing to a "renunciation" of her interest in the Utica Mutual agreement, and point out that under Estates, Powers and Trusts Law § 2-1.11 (d) the effect of a renunciation is "as though the renouncing person had died at the time of filing" the renunciation. While it is undisputed that Susan did not file a formal renunciation, plaintiffs' argument is that she in substance agreed to do so. If Susan renounced her interest prior to Charles's death, she must be deemed to have predeceased Charles, and by the terms of the Utica Mutual agreement the payments after Charles's death should go to plaintiffs.

Defendants argue that the purpose of Susan's agreement "to remove herself as primary contingent beneficiary" was to convey her rights under the Utica Mutual agreement to Charles. Again, it is undisputed that no formal "conveyance" was executed, but defendants argue that a conveyance is what Susan in substance agreed to. If Susan's rights were conveyed to Charles, Charles was entitled to name Violetta, or anyone else he liked, to receive the payments that Susan would have been entitled to under the Utica Mutual agreement.

Thus, the abstract nouns "renunciation" and "conveyance" are simply ways of describing the parties' contentions about what Charles and Susan intended in their divorce settlement in 1985. The real issue is whether they meant that Susan step aside in favor of her daughters, or in favor of Charles. The record shows that defendants are correct: The parties intended

Charles, not plaintiffs, to benefit from Susan's agreement to "remove herself."

A primary purpose in any divorce settlement is to divide assets between the husband and the wife, and where, as here, the wife agrees not to claim a particular asset, the natural reading of the agreement is that the asset becomes the husband's. It is true, of course, that parties may and often do agree to give assets to their children, but where that occurs one would normally expect the children to be mentioned. Susan's agreement to "remove herself" makes no mention of plaintiffs, suggesting that there was no intention to benefit them.

Other language in the divorce settlement supports this inference. The sentence immediately following the one in dispute in this case expressly gives a benefit to "the children." That sentence provides:

> "In addition, [Susan] will execute any and all forms or instruments necessary to change her as primary beneficiary under the husband's life insurance policy and [Charles] will agree that he will appoint the children irrevocable beneficiaries of such policy."

Thus, when the parties sought to confer rights on plaintiffs, they left no doubt of their intention.

Finally, a colloquy that occurred in open court during the divorce settlement confirms that the clause in dispute was meant to benefit Charles. Charles's attorney, in response to a question asked by Charles himself, recited on the record that the parties had "tried to make an accommodation" so that not only Susan, but also plaintiffs, "would not be alternate beneficiaries under the Utica Mutual contract." The plan had been for Charles to buy out plaintiffs' contingent interests, for the modest sum of $5,000 each. According to counsel's recital this plan failed, not because Susan and Charles did not agree to it, but because the Supreme Court Justice "indicated that he has no jurisdiction over the girls." If, as this colloquy implies, Susan and Charles were ready to agree to extinguish plaintiffs' contingent interests in the Utica Mutual contract completely, it is most unlikely that the extinction of Susan's interest was intended to benefit plaintiffs rather than Charles.

In short, the Appellate Division correctly concluded that the effect of the disputed provision in the 1985 divorce settlement was to give Charles the right to name anyone he chose as the primary contingent beneficiary of the Utica Mutual agreement.

Charles named Violetta, and Violetta is therefore entitled to the payments that became due under the Utica Mutual agreement between Charles's death and Susan's death.

Accordingly, the orders of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur.

Orders affirmed, with costs.