Jo Davis HALLINGBY, as Executrix of the Estate of Paul Hallingby, Jr., Plaintiff,

v.

Mai V. HALLINGBY, now known as Mai V. Harrison, and Metropolitan Life Insurance Company, Defendants.

No. 06 Civ. 5059(VM).

United States District Court, S.D. New York.

March 3, 2010.

Richard Henry Dolan, Schlam Stone & Dolan LLP, New York, NY, for Plaintiff.

James Gerard McCarney, Howrey LLP, New York, NY, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Jo Davis Hallingby ("J. Hallingby"), as Executrix of the Estate of Paul Hallingby, Jr. (the "Estate"), brought this action in New York State Supreme Court, New York County (the "State Court") against defendant Mai V. Hallingby, now known as Mai V. Harrison ("Harrison") and the Metropolitan Life Insurance Company ("MetLife") to recover certain annuity benefits and to enforce the marital property settlement dated May 5, 1994 (the "Settlement Agreement") between decedent Paul Hallingby, Jr. ("P. Hallingby") and Harrison, his former wife. MetLife removed the action to this Court, contending that the recovery of the annuity benefits at issue was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1001 et

seq. The Court then dismissed the action against MetLife with prejudice.

The remaining parties, J. Hallingby and Harrison, brought cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). By Decision and Order dated March 26, 2008, 541 F.Supp.2d 591, (the "Decision and Order"), the Court granted Harrison's motion and denied J. Hallingby's motion on the grounds that J. Hallingby's claims were foreclosed by ERISA and the terms of the two group annuity contracts at issue, Contract No. 10438 and Contract No. 1179A (collectively, the "Annuities").[1] J. Hallingby appealed the judgment to the United States Court of Appeals for the Second Circuit, arguing that her claims were governed by New York state law, not ERISA. By Decision and Order dated July 24, 2009, 574 F.3d 51 (the "Second Circuit Decision and Order"), the Second Circuit concluded that J. Hallingby's claims were not governed by ERISA, vacating the judgment and remanding the matter for adjudication under state law.[2]

J. Hallingby and Harrison now bring renewed cross-motions for summary judgment pursuant to Rule 56. For the reasons stated below, Harrison's motion is GRANTED in part and DENIED in part and J. Hallingby's motion is GRANTED in part and DENIED in part.

## I.  BACKGROUND [3]

### A.  FACTS

The facts underlying this action are set forth in the Second Circuit Decision and Order, familiarity with which is assumed. In summary, P. Hallingby married Harrison on May 18, 1983. During the course of the marriage, P. Hallingby procured the Annuities, which provided for future monthly payments to P. Hallingby beginning on his retirement. P. Hallingby designated Harrison as the survivor annuitant who would receive the annuity payments in the event of his death. P. Hallingby retired on October 1, 1986, and the Annuities vested on that date in accordance with their terms.

Several provisions contained in the Annuities are relevant to the instant motions. Paragraph 3.3(B) of the Annuities states, "[i]f both the Annuitant and the survivor annuitant are alive on the [Annuitant's retirement date], the Annuitant will not have the right to change the survivor annuitant for any reason." (Dolan Decl., Ex. B at Group Annuity Contract 10438 ¶ 3.3(B).) However, ¶ 4.5 of the Annuities states that, "[i]n the case of any annuity that has a provision for payment to a beneficiary, the designation of beneficiary may be changed by filing written notice of the change with Metropolitan on an appropriate form." (Id. ¶ 4.5.) Additionally, the Annuities also state that MetLife will:

---

**1.** See Hallingby v. Hallingby, 541 F.Supp.2d 591 (S.D.N.Y.2008) ("Hallingby I").

**2.** See Hallingby v. Hallingby, 574 F.3d 51 (2d Cir.2009) ("Hallingby II").

**3.** The factual recitation set forth below is drawn from the following documents, and any exhibits and declarations submitted therewith: Declaration of Richard H. Dolan, dated November 10, 2009 ("Dolan Decl."); Supplemental Declaration of Richard H. Dolan, dated November 19, 2009; Declaration of Harri-son, dated Sept. 14, 2007; J. Hallingby's Statement of Undisputed Material Facts, dated November 10, 2009; J. Hallingby's Supplemental Statement of Undisputed Facts, dated November 19, 2009; Harrison's Renewed Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated November 10, 2009; Harrison's Counterstatement of Undisputed Facts Pursuant to Local Rule 56.1, dated November 19, 2009. Except as quoted, no specific reference to these documents will be made. These facts are not in dispute.

honor any valid court order relating to the provision of child support, alimony payments, or marital property rights to a Spouse, former Spouse, child or other dependant of an Annuitant covered under this Contract if such order does not require payments under a form of benefit not otherwise available under this Contract nor increase the present value of the benefit payable under the Contract . . . .

(*Id.* ¶ 3.19.)

P. Hallingby and Harrison divorced June 7, 1994. The State Court entered the judgment (the "Judgment of Divorce"), which incorporated by reference the Settlement Agreement. The Settlement Agreement provided that Harrison and P. Hallingby

> acknowledge that they have no right, title or interest in any of the bank accounts, securities, pension plans, retirement plans, profit sharing plans, annuities or IRAs now in the name of the other, whether in the other's sole name or jointly or in trust for another.

(Dolan Decl., Ex. C. at Settlement Agreement Art. II(2).)

P. Hallingby married J. Hallingby on November 17, 1994. On the same day, P. Hallingby submitted the proper change-of-beneficiary forms to MetLife in order to revoke Harrison and designate J. Hallingby as survivor annuitant under the Annuities. MetLife declined the request.

P. Hallingby died on June 1, 2005. Following his death, MetLife began making payments to Harrison. J. Hallingby filed the instant action in State Court against Harrison and MetLife on May 30, 2006, alleging breach of contract and unjust enrichment against Harrison, and claiming that J. Hallingby had the right to the survivor benefits under the Annuities.

## B. *PROCEDURAL HISTORY*

MetLife removed the action to this Court on June 30, 2006, arguing that ERISA governed the issue of entitlement to the Annuities. At a pretrial conference before Magistrate Judge Andrew Peck, MetLife represented that it had no interest in the outcome of the dispute, and that it would make payments to either Harrison or J. Hallingby, as decided by the Court. By Order dated August 1, 2007, Magistrate Judge Peck dismissed MetLife from the action with prejudice.

The remaining parties moved for summary judgment by motions dated September 14, 2007. In its Decision and Order, this Court denied J. Hallingby's motion and granted Harrison's motion, holding that ERISA's anti-alienation provision and the terms of the Annuities precluded Harrison's waiver of her vested interest as survivor annuitant. On appeal, the Second Circuit concluded that ERISA did not govern the case, vacating this Court's decision. After determining that the federal courts retained subject matter jurisdiction, the Second Circuit remanded the case and instructed this Court to adjudicate J. Hallingby's claims under state law.

## II. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight*

*v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994). When deciding cross-motions for summary judgment, the standard to be applied "is the same as that for individual summary judgment motions and a court must consider each motion independent of the other." *Schultz v. Stoner*, 308 F.Supp.2d 289, 298 (S.D.N.Y.2004).

In a contract dispute, a motion for summary judgment may be granted if "the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir.2008).

### III. *DISCUSSION*

J. Hallingby asserts that according to New York law, Harrison waived her rights to any survivor benefits under the Annuities by the terms of the Settlement Agreement. She seeks recovery from Harrison under theories of breach of contract and unjust enrichment; she also requests from the Court a declaratory judgment declaring the rights of the respective parties. Harrison counters that her interest in the Annuities, having irrevocably vested at the time of her former spouse's retirement, could not be waived by the Settlement Agreement and that the claims against her should be dismissed.[4] As the parties do not dispute the material facts, and neither party argues that the terms of the Settlement Agreement or the Annuities are ambiguous, the Court may appropriately resolve this case on summary judgment. The Court grants Harrison's motion and denies J. Hallingby's motion with respect to the claims for declaratory judgment and unjust enrichment. As to the breach of contract claim, the Court denies Harrison's motion, and grants in part and denies in part J. Hallingby's motion, holding that Harrison breached the Settlement Agreement and awarding J. Hallingby nominal damages.

### A. *DECLARATORY JUDGMENT*

J. Hallingby argues that she is entitled to a declaratory judgment finding that she should receive all future monthly payments on the Annuities. Given that this conclusion squares with neither the terms of the Annuities, nor the Settlement Agreement, the Court denies her claim as a matter of law.

#### 1. *Terms of the Annuities*

#### a. *Compliance with the Terms of the Annuities*

As a threshold matter, J. Hallingby argues that because Harrison waived her interest in the Annuities, the Court dismissed MetLife from the action, and MetLife indicated that it would make the payments to whomever the Court orders, Harrison may not argue that the terms of

---

**4.** Harrison alternatively argues that the Court must dismiss the claims against her because the Estate lacks standing. New York law provides that "[a]ny action, other than an action for injury to person or property, may be maintained by and against a personal representative in all cases and in such manner as such action might have been maintained by or against his decedent." N.Y. Est. Powers & Trusts Law § 11–3.1. The Court finds that as to the breach of contract claim based upon the Settlement Agreement—a contract between the decedent and Harrison—J. Hallingby properly sues Harrison in her capacity as executrix. The Court does not address Harrison's standing argument as it relates to the declaratory judgment and unjust enrichment causes of action because the Court dismisses those claims, finding them to be without merit.

the Annuities prohibit J. Hallingby from receiving all future payments. The Court disagrees.

The Court notes that in the event that MetLife instituted an interpleader action, it may have limited Harrison's right to enforce compliance with the Annuities. When an insurer institutes an interpleader and withdraws itself from the action, it "waives precise compliance with the terms of a change of owner or beneficiary provision .…" *Provident Mutual Life Ins Co. of Phil. v. Vergara*, No. 91 Civ. 5657, 1995 WL 571874, at *2 (S.D.N.Y. Sept. 27, 1995) (*citing Lopez v. Massachusetts Mutual Life Ins. Co.*, 170 A.D.2d 583, 566 N.Y.S.2d 359, 360 (2d Dep't 1991)). Although MetLife assures the Court that it will make the payments to either Harrison or J. Hallingby, it did not initiate an interpleader. Even if the Court were to take MetLife's declarations as creating an interpleader in practical effect, the question at issue here is not whether P. Hallingby substantially complied with the technical requirements of changing beneficiaries, but whether the Annuities permitted P. Hallingby to change beneficiaries at all.

The Court likewise finds that any possible waiver by MetLife has no effect on Harrison's ability to enforce the terms of the Annuities. By the terms of the Annuities, as discussed below, Harrison's interest as survivor annuitant vested irrevocably at the time of P. Hallingby's retirement. Therefore, even if MetLife waived its rights of strict compliance with the terms of the Annuities, the Court finds that MetLife was not permitted to waive those rights already vested in Harrison.

b. *Survivor Annuitant Irrevocably Vested After P. Hallingby's Retirement*

In this Court's prior ruling, it found that, under the terms of the Annui-ties, P. Hallingby could not designate J. Hallingby as survivor annuitant. Although the Court interpreted the Annuities in a different context—i.e., determining whether ERISA precluded the enforcement of the waiver—the Court's conclusions were based on principles of contract interpretation that are well-settled under New York law. Accordingly, the Court now reiterates its conclusion that the terms of the Annuities prohibit the annuitant from changing the survivor annuitant designation after the date of retirement.

Under New York law, a contract "should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir.2005). "[A]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless … is not preferred and will be avoided if possible.… Rather, an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir.1992) (internal citation and quotation marks omitted); *see also Columbus Park Corp. v. Department of Hous. Pres. & Dev.*, 80 N.Y.2d 19, 586 N.Y.S.2d 554, 598 N.E.2d 702, 708 (1992) ("[A] construction which makes a contract provision meaningless is contrary to basic principles of contract interpretation.").

In arguing that the Annuities did not preclude P. Hallingby from designating a replacement survivor annuitant after his retirement, J. Hallingby relied on ¶ 3.19, which provides that MetLife will honor any valid court order relating to the provision of marital property rights, and ¶ 4.5, which states that the beneficiary may be changed by filing a certain form. The Court, hold-

ing that those provisions should not be read in isolation, explained that

> [Paragraph] 4.5 must be read in conjunction with ¶ 3.3B, which states that if the beneficiary and participant are both alive on the participant's retirement date, "the Annuitant will not have the right to change the survivor annuitant for any reason." The only way to give effect to both of these provisions is to interpret ¶ 4.5 to apply only before a participant reaches his or her retirement date. Additionally, SI 3.19 states that a court order will be enforced only if it "does not require payments under a form of benefit not otherwise available under this Contract." In this case, allowing the change in beneficiary pursuant to the [Settlement] Agreement would require payment of a benefit not allowed under the Annuities.

*Hallingby I*, 541 F.Supp.2d at 598. J. Hallingby makes the same argument in her renewed motion for summary judgment, asserting that the Settlement Agreement, as incorporated in the Judgment of Divorce, is a "valid court order relating to the provision of … marital property rights" as contemplated by ¶ 3.19. Further, J. Hallingby contends that because she would consent to receiving the benefits for Harrison's lifetime and not her own, a ruling in her favor would not require "payment under a form of benefit not otherwise payable under [the Annuities] nor increase the present value of the benefit payable under [the Annuities]." (Dolan Decl., Ex. B at Group Annuity Contract 10438 ¶ 3.19.)

The Court is not persuaded by J. Hallingby's interpretation of the Annuities. The Annuities explicitly state that "[i]f both the Annuitant and the survivor annuitant are alive on [the Annuitant's retirement date], the Annuitant will not have the right to change the survivor annuitant for *any reason*, including the death of the survivor annuitant, regardless of whether the monthly annuity payments to the An-

nuitant have commenced." (*Id.* ¶ 3.3B (emphasis added).) At the time of P. Hallingby's retirement, both he and Harrison were alive. Allowing P. Hallingby to appoint J. Hallingby as the survivor annuitant after his retirement would render ¶ 3.3B meaningless. Such a replacement would be problematic even if the change in beneficiary were deemed pursuant to a valid court order because, as this Court previously held, ¶ 3.3B withholds the right of the Annuitant to designate an alternative survivor annuitant after retirement— irrespective of the reason. Recognizing P. Hallingby's request would require payment of a benefit not available under ¶ 3.3B the Annuities, thus running afoul of the limitation on valid court orders provided for in ¶ 3.19.

Construing the Annuities "to give full meaning and effect to all of [their] provisions," *LaSalle Bank*, 424 F.3d at 206, the Court holds that the Annuities prohibited P. Hallingby from changing his survivor annuitant designation after the date of his retirement.

### 2. *Settlement Agreement*

J. Hallingby asserts, however, the Court should look not to the substantive terms of the Annuities in determining whether to issue a declaratory judgment in her favor, but to the Settlement Agreement. J. Hallingby argues that the Settlement Agreement memorializes Harrison's valid and enforceable waiver of her interests in the Annuities, nullifying the explicit terms of the plan document. To support her contention, J. Hallingby points to *Silber v. Silber*, 99 N.Y.2d 395, 757 N.Y.S.2d 227, 786 N.E.2d 1263 (2003), in which the New York Court of Appeals recognized a defendant's waiver of her former spouse's pension benefits and the former spouse's appointment of a replacement beneficiary. The terms of the pension plan permitted

the participant to change the beneficiary to conform with the divorce settlement, but he had failed to submit the appropriate paper work before his death. The court found that according to the terms of the parties' agreement, the defendant had waived her interest in the decedent's pension benefits—even though the plan documents did not reflect the waiver. The court upheld the decedent's alternative designated beneficiary as the recipient of the pension.

The circumstances of *Silber*, however, are easily distinguishable from those at issue in the instant matter. There, the barrier to fully effectuating the parties' divorce settlement was the decedent's failure to submit the proper change-of-beneficiary forms during his lifetime, not the terms of the pension agreement. Here, as discussed above, the Settlement Agreement explicitly prohibits the participant from changing beneficiaries after retirement. Abiding by the terms of the Annuities, MetLife declined P. Hallingby's request to revoke Harrison as beneficiary and name J. Hallingby as the new beneficiary, stating that the Annuities had fully vested at the time of P. Hallingby's retirement.

■ Pursuant to New York law, a divestiture of a beneficiary's interest in an annuity, such as the one the defendant agreed to in *Silber*, will make the annuitant "the sole owner of the annuity payments coming due during his lifetime and/or that of [the beneficiary], with a corresponding unrestricted power to name or appoint primary beneficiaries of such payments coming due after his death, or failing that, to have the payments distributed as part of his estate." *Kamens v. Utica Mutual Ins. Co.*, 6 A.D.3d 1237, 776 N.Y.S.2d 671, 675 (4th Dep't 2004), *aff'd*, 4 N.Y.3d 460, 796 N.Y.S.2d 328, 829 N.E.2d 292 (2005). When recognizing a divestiture, New York courts will often overlook

technical noncompliance with insurance contracts—such as failing to fill out the correct form or get approval from a third party—in order to honor the intent of the parties to the divorce settlement. *See, e.g., id.* at 677 (Pigott, P.J. and Hayes, J., concurring in part and dissenting in part). But J. Hallingby does not identify any precedent to demonstrate that New York courts have applied those principles of law where, such as here, the annuity or pension plan in question explicitly withholds from the annuitant the unrestricted power to name or appoint beneficiaries. To extend those principles here would require reading the Settlement Agreement as transferring the right to appoint an alternate beneficiary from MetLife, a nonparty to the Divorce Agreement, to P. Hallingby. *See Davis v. Blige*, 505 F.3d 90, 103 (2d Cir.2007) (*quoting EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) ("It goes without saying that a contract cannot bind a nonparty.")).

J. Hallingby argues, however, that the Court could enforce a waiver against Harrison without violating the terms of the Annuities or refashioning the contractual agreement between P. Hallingby and MetLife. She contends that a waiver is different from an assignment or a revocation, and that a waiver by Harrison would be consistent with the provision that "the Annuitant will not have the right to change the survivor annuitant for any reason." (Dolan Decl., Ex. B at Group Annuity Contract 10438 ¶ 3.3(B).) The Court recognizes that the simple waiver of a beneficiary's interest is distinct from the designation of an alternate payee. *See, e.g., Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, — U.S. ——, 129 S.Ct. 865, 873, 172 L.Ed.2d 662 (2009). Indeed, Harrison's waiver, without more, would be consistent with the plain language of ¶ 3.3(B).

J. Hallingby's argument fails when she asserts that P. Hallingby should have been allowed to fill the void left by Harrison's waiver. Appointing J. Hallingby as survivor annuitant—after P. Hallingby's retirement and at his request—violates the provision that "the Annuitant will not have the right to change the survivor annuitant for *any reason*," including, as the language "any reason" would suggest, in order to fill the vacancy left by the waiver of the original survivor annuitant. In other words, even if the Court recognizes that Harrison waived her interest in the Annuities, there is no basis to find that J. Hallingby should be designated as the new survivor annuitant.

Accordingly, the Court finds that J. Hallingby is not entitled to the declaratory relief that she seeks.

## B. *BREACH OF CONTRACT*

■ J. Hallingby claims that Harrison is liable for breach of the terms of the Settlement Agreement. Under New York law, the required elements for a breach of contract claim are the existence of a contract, the breach of that contract by the defendant, and resulting damages. *See National Mkt. Share, Inc. v. Sterling Nat'l Bank,* 392 F.3d 520, 525 (2d Cir.2004). Here, neither party disputes the existence of the Settlement Agreement or its validity. Therefore, the Court need only determine whether Harrison breached the terms of the Settlement Agreement, and if so, whether the Estate suffered damages as a result.

■ J. Hallingby argues that by retaining the benefits of the Annuities, Harrison is in breach of the Settlement Agreement. The relevant provision of the Settlement Agreement states that Harrison has "no right, title or interest in any annuities" held in P. Hallingby's name "or jointly or in trust for another." (Dolan Decl., Ex. C. at Settlement Agreement Art. II(2).) J.

Hallingby argues that this language constitutes a valid and enforceable waiver as applied to the Annuities because it is "explicit, voluntary, and made in good faith." *Silber,* 99 N.Y.2d at 404, 757 N.Y.S.2d 227.

Harrison does not dispute that she agreed to the terms of the Settlement Agreement voluntarily and in good faith, but does argue that the terms of the Settlement Agreement do not explicitly apply to the Annuities. Relying on the principle of contract interpretation that holds that the expression of one thing is the exclusion of another, Harrison contends that though she specifically waived interest in three life insurance policies, the Settlement Agreement contained no such specific waiver of the Annuities. She argues that the life insurance policy provisions included in the Settlement Agreement demonstrate that the parties understood how to effect a waiver, and that the parties would have done the same with the Annuities if waiver was intended. Given that the specific waivers encompass a different class of assets—life insurance as opposed to annuities—the Court is not persuaded by Harrison's argument, and finds that Article II(2) of the Settlement Agreement constitutes an explicit waiver of Harrison's interest in the Annuities. *See, e.g., March v. March,* 233 A.D.2d 371, 650 N.Y.S.2d 750, 750 (2d Dep't 1996) (finding similar language to effect waiver). Accordingly, the Court concludes that the waiver is valid and enforceable, and that Harrison is in breach of the Settlement Agreement by failing to waive her interests as agreed.

■ Despite proving Harrison's breach of the Settlement Agreement, J. Hallingby is unable to establish that the Estate has suffered any actual damages as a result. Courts award contract damages to "plac[e] the aggrieved party in the same economic position it would have been in had both parties fully performed."

*Bausch & Lomb Inc. v. Bressler,* 977 F.2d 720, 728–29 (2d Cir.1992). "The damages, however, must be not merely speculative, possible, and imaginary but they must be reasonably certain and such only as actually follow or may follow from the breach of the contract." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.,* 487 F.3d 89, 110 (2d Cir.2007) (internal quotation marks omitted). New York courts interpret "certain" to refer to "the fact of damage, not the amount." *Id.* Here, to prove actual damages, J. Hallingby must show with reasonable certainty that had Harrison performed under the Settlement Agreement, MetLife would have honored P. Hallingby's change-of-beneficiary request and made payments to J. Hallingby. The Court finds that J. Hallingby does not do so, even considering MetLife's representations to the Court. MetLife's statements—though indicating that MetLife would make payments to whomever the Court orders pursuant to the declaratory judgment now sought by J. Hallingby—fail to demonstrate with sufficient certainty how MetLife may have acted absent litigation and in the event that Harrison had waived her interest in the Annuities. As discussed above, because the Annuities prohibited P. Hallingby from naming a new survivor annuitant after his retirement, it is possible that Harrison's performance under the Settlement Agreement would have effectively transformed P. Hallingby's joint and survivor life annuity to a life annuity that extinguished upon his death.[5] Accordingly, the Court finds that J. Hallingby is not entitled to an award of actual damages.

Nevertheless, the Court finds that Harrison is liable for breach of contract. Under New York law, "[i]t is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of the loss cannot be proven with sufficient certainty, the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any." *Schanfield v. Sojitz Corp. of Am.,* 663 F.Supp.2d 305, 348 (S.D.N.Y.2009) (internal quotation marks omitted); *see also T & N PLC v. Fred S. James & Co. of N.Y., Inc.,* 29 F.3d 57, 60 (2d Cir.1994) ("[N]ominal damages are always available for breach of contract."). Having established that Harrison failed to perform her contractual duty under the unambiguous language of the Settlement Agreement, the Court grants J. Hallingby's motion for summary judgment as to liability for breach of contract and awards her nominal damages as representative of the Estate.

## C. *UNJUST ENRICHMENT*

■ J. Hallingby argues that Harrison has been unjustly enriched by accepting the substantial benefits provided to her under the Settlement Agreement while simultaneously continuing to receive payments under the Annuities. In essence, J. Hallingby contends that Harrison has been unjustly enriched by her breach of the Settlement Agreement. However, "New York law does not permit recovery in quantum meruit ... if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 175 (2d Cir.2005) (stating that quantum meruit and unjust enrichment claims should be analyzed "together as a single quasi-contract claim"). Given that the Court finds Harrison in breach of the Settlement Agreement,

---

**5.** Given, however, that MetLife has disclaimed any interest in the instant litigation, the Court need not resolve the question of

MetLife's rights to the Annuities relative to Harrison.

which governs the issues raised by J. Hallingby in support of her unjust enrichment claim, the Court grants Harrison's summary judgment motion to dismiss this claim.

### D. *ATTORNEYS' FEES AND COSTS*

J. Hallingby seeks an award of attorneys' fees and costs under the Settlement Agreement, which provides for reimbursement of "any and all expenses, costs and reasonable attorneys' fees." (Dolan Decl., Ex. C. at Settlement Agreement Art. XXVI(2).)

 Any attorney who applies for court-ordered compensation in the Second Circuit "must document the application with contemporaneous time records ... specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F.Supp.2d 307, 312 (S.D.N.Y.2009) (*quoting New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983)). J. Hallingby is directed to submit, within ten days of the date of this Order, detailed documentation of all work performed by and rates billed for each attorney, and any other documentation that would support the attorneys' fees and costs.

### III. *ORDER*

**ORDERED** that the motion (Docket No. 45) of plaintiff Jo Davis Hallingby, as Executrix of the Estate of Paul Hallingby, Jr. ("J. Hallingby"), for summary judgment is DENIED with respect to J. Hallingby's declaratory judgment and unjust enrichment claims; and it is further

**ORDERED** that the motion (Docket No. 45) of J. Hallingby for summary judgment with respect to J. Hallingby's breach of contract claim against defendant Mai V. Hallingby, now known as Mai V. Harrison ("Harrison"), is GRANTED as to liability and GRANTED in part and DENIED in part as to damages; and it is further

**ORDERED** that J. Hallingby is awarded nominal damages in the amount of $1 to be paid by Harrison; and it is further

**ORDERED** that the motion (Docket No. 49) of Harrison for summary judgment is DENIED with respect to J. Hallingby's claim for breach of contract against Harrison; and it is further

**ORDERED** that the motion (Docket No. 49) of Harrison for summary judgment is GRANTED with respect to J. Hallingby's claims for unjust enrichment and declaratory judgment; and it is finally

**ORDERED** that J. Hallingby submit further documentation in support of her application for attorneys' fees and costs within ten days of the date of this Order.

**SO ORDERED.**