**PENSION PLAN FOR EMPLOYEES OF BATTENFELD GREASE & OIL CORP, et al., Plaintiffs,**

v.

**PRINCIPAL MUTUAL LIFE INSURANCE CO., Defendant.**

**No. 95–CV–7839.**

United States District Court, W.D. New York.

Aug. 12, 1999.

Gary Kotaska, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for plaintiffs.

Kevin M. Kearney, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, for defendant.

## DECISION and ORDER

SIRAGUSA, District Judge.

This action was brought by the plaintiff pension plans against the defendant insurance company alleging breach of fiduciary

duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.* and for breach of contract. Before the Court is the defendant's motion for summary judgment, filed May 22, 1997 (document # 8), and the plaintiffs' motion for summary judgment, filed May 23, 1997 (document # 12). The plaintiffs seek summary judgment on the theory that the defendant insurance company violated the terms of the investment contract in force between the parties, and the defendant seeks summary judgment on the basis that the plaintiffs' fund manager misunderstood the contract and did not move the pension funds in sufficient time to avoid a $234,355 loss to the fund. In dispute is whether the defendant is a fiduciary under ERISA, whether the plaintiffs have standing to bring the suit, whether ERISA supersedes any state law contractual claim, and whether any claims are barred by the applicable statutes of limitations.

Jurisdiction in this court is based on a federal question pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(f). For the breach of contract claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1332 and diversity jurisdiction under 28 U.S.C. § 1332.

The plaintiffs filed their suit September 27, 1995, and the case was originally assigned to the Honorable William M. Skretny. The parties have completed discovery. Following oral argument on the motions, Judge Skretny transferred the case to the undersigned by an order entered on December 15, 1997 (document # 26). At the suggestion of the parties, this Court heard reargument on the motions and reserved decision. For the reasons stated below, the Court denies the defendant's motion for summary judgment, and grants in part and denies in part the plaintiffs' motion for summary judgment.

## BACKGROUND

The plaintiffs are Battenfeld Grease and Oil Corporation of New York ("BATCO") and Battenfeld–American, Inc. ("BATAM"). Both companies operated in Buffalo, New York, and had pension plans which met the definition of a pension plan under ERISA, 29 U.S.C. § 1002(2)(A).

Since 1989, John A. Bellanti Sr. has served as the trustee of each plan. Kent aff., at 3. The other trustee is his wife, Florence Bellanti. Kent aff., at 3. Mr. Bellanti had handled the pension funds for BATAM and BATCO since becoming BATCO's controller in November, 1956. Defendant's Statement of Undisputed Facts (May 22, 1997, document # 9) ("Defendant's Statement"), at 2. In September 1983, after having worked his way up through the ranks, Mr. Bellanti purchased both companies, BATAM and BATCO, and became president and chairman of the board of directors and the majority shareholder for both companies. He has also been a certified accountant for thirty-one years. *Id.*, at 2–3.

The pension plans for BATAM and BATCO were funded by two contracts with the defendant [1]. One was a group annuity contract between the defendant and the trustees of the Battenfeld Pension Plan, contract 51959. The other was between the defendant and the trustees of the Battenfeld American Pension Plan, also a group annuity contract, number 51960. Each was issued on March 17, 1981 with an effective date of January 1, 1980, and each was identical in all material respects to the other. The contracts were drafted by the defendant and were not subject to negotiation. Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment (May 23, 1997, document # 13) ("Plaintiffs' Memorandum"), at 2. Prior to signing the contracts as trustee, Mr. Bellanti reviewed them with the assistance of a lawyer, Gary

---

**1.** The defendant was originally known as The Bankers Life Company, but changed its corporate name in 1986 to Principal Mutual Life Insurance Company. Plaintiffs' Memorandum of Law (May 23, 1997, document # 13), at 2 n. 1.

Kotaska, Esq. Defendant's Statement, at 3–4.

Both contracts were supported by the defendant's General Account, about which the defendant stated, "[t]he assets held in the General Account are invested for the benefit of our insurance and retirement plan customers," and consisted primarily of bonds and other loans, such as commercial and residential mortgages. Defendant's Statement, at 4. The contracts permitted the trustees of the pension plans to withdraw funds from the contract at any time. *Id.*

From the inception of the plans in January 1980 until April 1994, all monies deposited pursuant to the contracts were invested in the General Asset Fund, sometimes referred to as the General Account. Plaintiffs' Memorandum, at 3. Principal reported regularly on the value of the invested funds on a "book value" basis. The book value consisted of the sum of all contributions to date, along with the sum of all interest earned to date. *Id.* The defendant also reported from time to time the "market value" of the investments, but did not disclose to the plaintiffs the formula for calculating this value. *Id.*

The contracts' Article VI, Limitation on Payments and Transfers, governed payout of the funds upon demand of the plaintiffs. Section 1, Subsection 2, Accelerated Payment or Transfer at Investment Value, reads in pertinent part,

> In lieu of the installment payments described in Subsection 1 above, the Contractholder may request that subject to the limitations of this Article any payment or transfer be made on an investment value basis. In this event, the amount of payment or the amount transferred will be a percentage of the amount deducted from the General Asset Fund. Such percentage adjusts for the difference between the interest rate

currently available for new investments and the current Experience Interest Rate for this contract. The Bankers Life will inform the Contractholder in writing of said percentage within 30 days of the Contractholder's written request for payment or transfer.

> \*        \*        \*        \*        \*        \*

> In any event, payment or transfer under this Subsection 2 will not be made until The Bankers Life has received written agreement from the Contractholder to the investment value adjustment.

Kent aff., at Exhibit F. The contracts provided that the plaintiffs could elect either installment payments, or a lump sum payment at investment value. If the latter, the amount of the payment would be adjusted by the defendant to account for the difference in interest rates for current investments and something they called the "Experience Interest Rate." The contracts defined Experience Interest Rate in Article 1, Section 3, Miscellaneous, as:

> *Experience Interest Rate* means, as to any Accounting Year [2], a rate of interest per annum, as determined for this contract by The Bankers Life by application of its established method of computing net interest earnings on General Asset Funds held as to contracts of this class for such year. . . .

In 1982, the defendant announced to all its contract holders, including the plaintiffs, their adoption of what they termed an "Investment Quarter Interest" ("IQI") method for the General Account. Plaintiffs' Memorandum, at 4. The plaintiffs brief describes this method: "The IQI based investment results [in] an average rate during a calendar quarter instead of a calendar year." Plaintiffs' Memorandum, at 4–5. In a letter from Mrs. Marion Barnhill, dated February 8, 1982, to Mr. Bellanti (attached as Exhibit 5 to Docu-

---

**2.** Accounting Year is defined in Article I, Section 2, Important Dates and Periods, as, "a calendar year. The first accounting year is the calendar year in which the Contract Date

occurs." Contract Date is the date shown on the face of the contract, in this case, January 1, 1980. Kent aff., at Exhibit G.

ments in Support of Plaintiff's Motion for Summary Judgment) and marked as Exhibit 15 to Mr. Bellanti's deposition, Mrs. Barnhill explained, "[t]he quarterly investment periods will more closely reflect current investment conditions at the time of your deposit than annual investment periods do."

The plaintiffs allege that the defendant's motivation for changing to the IQI method was to "reduce the flexibility of contract-holders in deciding whether and when to make an investment in the General Asset Fund and/or whether or when to terminate their contract arrangement with Principal." Plaintiffs' Memorandum, at 5 (citation omitted).

## DISCUSSION

The law on summary judgment is well settled. Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3rd Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial obligation, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187

(5th Cir.1991); Fed.R.Civ.P. 56(f). Once the moving party has met its burden, mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). The Court, of course, must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir.1990). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir.1996). It is equally well settled that in diversity actions, such as the one at bar, federal court sits and "operates as if it were a state court, and must apply state substantiative law" *Smith v. Bell Sports, Inc.*, 934 F.Supp. 70, 73 (W.D.N.Y.1996).

***Preemption of State Contractual Claims***

ERISA § 514, 29 U.S.C. § 1144(a) is the preemption language which has been described by the Second Circuit as "purposefully sweeping." *Romney v. Lin*, 94 F.3d 74, 78 (2nd Cir.1996). Section 1144(a) reads,

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

29 U.S.C. § 1144(a). The exemptions in subsection (b) refer to state laws that regulate insurance, banking, or securities and state criminal statutes. The plaintiffs argue that ERISA does not preempt their

state law contract claim since, "[t]he breach of contract claim here at issue has no connection to any question of plan structure or administration ... [the plaintiffs'] claim against Principal arises under a private contract, and not under the terms of an employee benefit plan." Plaintiffs' Memorandum of Law in Opposition to Defendant's motion for Summary Judgment (Jun. 30, 1997, document # 19) ("Plaintiffs' Memorandum in Opposition"), at 4. The plaintiffs also argue that the contracts at issue were "intended as funding vehicles for pension plans" and that the defendants knew that purpose. Plaintiffs' Memorandum, at 2–3. Additionally, the plaintiffs' argued that their claims concern "the valuations that Principal performed of the plan assets invested with it by the Battenfeld Pension Plans." Plaintiffs' Memorandum in Opposition, at 21.

This Court's research has revealed that courts have found preemption when the litigants sued to enforce a benefit due under a pension plan and, as the Supreme Court has held in at least three cases "[t]he phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan....'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (*quoting Metropolitan Life Ins. Co. v. Commonwealth of Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) *quoting Shaw v. Delta Air Lines*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). In *Dedeaux*, the Court wrote that, "[t]he common law causes of action raised in Dedeaux's complaint, each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 514(a)." *Dedeaux*, 481 U.S. at 48, 107 S.Ct. 1549. *Metropolitan* involved a Massachusetts statute that required mandatory minimum health care benefits for inclusion in general insurance policies and was held not preempted under ERISA. *Shaw*

involved similar concerns under New York law which mandated disability benefits for pregnant women and was held to be partially preempted.

On the other hand, more recent interpretations of the preemption language in ERISA have been more limiting. The Second Circuit wrote that the Supreme Court has moved away from a strict dictionary definition of the "relates to" language in § 514 of the Act and has instructed the courts to " 'look ... to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.' ... That look should be guided by common sense. It should avoid a construction that theoretically is unending, which the Supreme Court warned against when it turned away from 'relate to' as a guide." *Plumbing Industry Board, Plumbing Local Union No. 1 v. E.W. Howell Co., Inc.*, 126 F.3d 61, 66 (2nd Cir.1997) (*quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers*, 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). The Second Circuit held in *Plumbing Industry Board* that "to overcome the anti-preemption presumption, a party challenging a statute must convince a court that there is something in the practical operation of the challenged statute to indicate that it is the type of law that Congress specifically aimed to have ERISA supersede." *Plumbing Industry Board*, 126 F.3d at 66 (citation omitted). Because that case involved the construction of a statute which was allegedly preempted by ERISA, and the case at bar involves an application of a common law breach of contract claim, the Court must look further into the case law to determine whether the plaintiffs' breach of contract claim is preempted.

In *Plumbing Industry Board*, the Second Circuit identified further methods by which the Supreme Court held that the anti-preemption presumption could be overcome:

First, preemption will apply where a state law clearly 'refers to' ERISA plans in the sense that the measure 'acts immediately and exclusively upon ERISA plans' or where 'the existence of ERISA plans is essential to the law's operation.' *Dillingham*, at 324, 117 S.Ct. at 838. Second, a state law is preempted even though it does not refer to ERISA or ERISA plans if it has a clear 'connection with' a plan in the sense that it 'mandate[s] employee benefit structures or their administration' or 'provide[s] alternative enforcement mechanisms.' *Travelers*, 514 U.S. at 658, 115 S.Ct. 1671. Outside these areas, the presumption against preemption is considerable-state laws of general application that merely impose some burdens on the administration of ERISA plans but are not 'so acute' as to force an ERISA plan to adopt certain coverage or to restrict its choice of insurers should not be disturbed. *De Buono*, at 816 & n. 16, 117 S.Ct. at 1753 & n. 16.

*Plumbing Industry Board, Plumbing Local Union No. 1 v. E.W. Howell Co., Inc.*, 126 F.3d 61, 67 (2nd Cir.1997) (*quoting Calif. Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 325, 117 S.Ct. 832, 838, 136 L.Ed.2d 791 (1997); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers*, 514 U.S. 645, 658, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *De Buono*, 520 U.S. 806, 816 & n. 16, 117 S.Ct. 1747, 1753 & n. 16, 138 L.Ed.2d 21 (1997)).

■ Applying this analysis, the Court finds that the breach of contract claim (the second cause of action in the complaint) is not preempted by ERISA. Here the insurance contracts funding the plan and the particular dispute were not formed under any state law mandating this particular method of funding the ERISA pension plans. Although at first blush the breach of contract claim may appear to be an alternate enforcement mechanism, that claim is not dependant on the ERISA pension plan, but merely on the existence of the contracts at issue here. In *Krass v. Connecticare, Inc.*, No. Civ.3:96CV2565(AHN), 1998 WL 26409 (D. Conn. Jan 14, 1998), where a claimant alleged breach of contract, misrepresentation, fraud and violation of the Connecticut Unfair Trade Practices Act, the district court held that ERISA did preempt her claims since, "[w]ithout the [ERISA pension] plan, it's apparent Krass could not assert this claim. Because the merits of this claim are contingent upon the rights conferred by the ERISA plan, it fails the first prong of the preemption test and must be dismissed." *Id.*, at *4 (citation omitted). In contrast, the breach of contract claim here is entirely independent of the ERISA pension plan. It can stand on its own. The contracts refer to the "Pension Plan for Employees of Battenfeld Grease & Oil Corp. of New York" and "The Battenfeld–American, Inc. Pension Plan" but those contracts are not the pension plans. The breach alleged here refers to the valuation of the assets under the contracts at the time of their transfer to another insurance company, not the benefits due to plan participants. The Court concludes that ERISA does not preempt the plaintiffs' cause of action for breach of contract.

### The Plaintiffs' Breach of Contract Claim

■ Before reaching the merits of the plaintiffs' breach of contract claim, the Court must address the defendant's argument that it is precluded by the New York six-year Statute of Limitations. N.Y.C.P.L.R. § 213(2). The defendant argues that the breach of contract claim accrued when it sent a letter to the plans' administrator in 1982 informing him of a new method of crediting interest rates. It claims the statute limits claims filed after 1988. Defendant's Memorandum of Law (May 22, 1997, document # 10), at 13. The plaintiffs counter that the 1982 letter from Marion Barnhill to John A. Bellanti (Feb-

ruary 8, 1982)[3], "advis[ed] plaintiffs of a change in *the method of crediting interest on deposits* ... [not] that [defendant] was changing *the method of calculating the investment value of the Contracts on termination.*" Plaintiffs' Memorandum of Law in Opposition, at 13–14 (emphasis in original, citations omitted).

The Court has reviewed Ms. Barnhill's February 1982 letter as well as her later April 21, 1982 letter[4] and the declaration of Gary F. Kotaska (Jun. 30, 1997, document # 21) with its attached exhibits and concludes that a material question of fact exists as to whether the plaintiffs had notice of the change in the cash-out valuation procedures in 1982. A material question of fact about when a cause of action accrued on a statute of limitations defense is sufficient to preclude summary judgment. *See Schmidt v. McKay*, 555 F.2d 30, 36–37 (2nd Cir.1977) (district court erred in holding there was no "genuine issue" of fact on accrual of fraud cause of action); *Shinabarger v. United Aircraft Corp.*, 381 F.2d 808, 810 (2nd Cir.1967) (district court erred in determining material issues of fact on summary judgment motion); *West Haven School District v. Owens–Corning Fiberglas, Corp.*, 721 F.Supp. 1547, 1556 (D.Conn.1988) ("[t]he question of when a cause of action accrues ... is ordinarily a question of fact for a trier....").

Ms. Barnhill's February 1982 letter stated, in addition to the portions quoted by the plaintiffs, that "[w]e're also making a change in the method we use to determine interest earned on funds deposited in prior years." This sentence could imply that defendants were also changing the valuation of the funds for the purposes of a cash-out in addition to the plaintiffs' interpretation that the letter merely notified

them of a change in the interest to be earned on new deposits to the pension fund. Since summary judgment cannot be granted because of at least one material issue of fact, the Court will not consider whether the defendant's change in interest crediting in 1982, or the calculations used to determine the funds' values upon cash-out in 1994, violated the terms of the contracts, leaving that question for determination at trial.

## CONCLUSION

The defendant's motion for summary judgment (document # 8) is denied in its entirety and the plaintiffs' motion for summary judgment (document # 12) is granted in part and denied in part. Specifically, the Court holds that the plaintiffs' breach of contract cause of action, the second cause of action in the complaint, is not preempted by ERISA, but that the current plaintiffs do not have authority to sue for an alleged breach of fiduciary duties under ERISA. Therefore, the Court dismisses the plaintiffs' first cause of action and will issue a separate pre-trial order with regard to the second cause of action over which the Court has jurisdiction on diversity grounds.

---

**3.** A copy of the letter is included in Plaintiffs' Documents in Support of Plaintiffs' Motion for Summary Judgment (received by the Clerk on May 23, 1999, but not filed as a separate document in this case) at tab 5 and in Diane Nowak Kent's declaration (filed May 22, 1997, document # 11), as Exhibit L.

**4.** A copy of this letter is attached to Diane Nowak Kent's declaration (May 22, 1997, document # 11) as Exhibit M.