**Jo Davis HALLINGBY, as Executrix of the Estate of Paul Hallingby, Jr., Plaintiff,**

**v.**

**Mai V. HALLINGBY, now known as Mai V. Harrison, and Metropolitan Life Insurance Company, Defendants.**

**No. 06 Civ. 5059 (VM).**

United States District Court, S.D. New York.

March 26, 2008.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Jo Davis Hallingby ("Hallingby"), as Executrix of the Estate of Paul Hallingby, Jr., brought this action in New York State Supreme Court against defendant Mai V. Hallingby, now known as Mai V. Harrison ("Harrison") and the Metropolitan Life Insurance Company ("MetLife") to enforce the marital property settlement between decedent Paul Hallingby, Jr. ("Paul Hallingby") and Harrison, his former wife, and recover certain annuity benefits. MetLife removed the action to this Court, contending that the recovery of the annuity benefits at issue is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1001, et seq. The action against MetLife was subsequently dismissed with prejudice.

The remaining parties, Hallingby and Harrison, now bring cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). For the reasons stated below, Harrison's motion is GRANTED and Hallingby's motion is DENIED.

## I. BACKGROUND [1]

Harrison and Paul Hallingby were married on May 18, 1983. During their marriage, Paul Hallingby participated in the Pension Plan for Employees of Merrill Lynch & Co., Inc. and Affiliates (the "Plan"), which provided that Paul Hallingby would receive a monthly pension following his retirement, and that, following his death, the pension would continue to be

Richard Henry Dolan, Schlam Stone & Dolan LLP, New York, NY, for Plaintiff.

James Gerard McCarney, Howrey LLP, New York, NY, for Defendants.

[1]. The factual recitation set forth below is drawn from the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, dated Sept. 14, 2007; the Memorandum in Support of Mai V. Hallingby's Motion for Summary Judgment, dated Sept. 14, 2007; the Declaration of Richard H. Dolan, dated Sept. 14, 2007 ("Dolan Decl."); the Declaration of Mai V. Hallingby, dated Sept. 14, 2007; and the Answer of MetLife, dated Jan. 25, 2007 ("MetLife Ans."). Except as quoted Or otherwise cited, no other specific reference to these documents will be made. These facts are not in dispute.

paid to his beneficiary at a reduced rate. In 1984 and 1986, Paul Hallingby named Harrison, his wife at the time, as the beneficiary of the survivor benefits. Paul Hallingby retired on October 1, 1986. Under the terms of the Plan, his benefits, and those of his beneficiary, then vested. The Plan was terminated on December 13, 1988. In order to satisfy its obligations to the Plan's participants, Merrill Lynch purchased two group annuity contracts, Contract No. 10438 and Contract No. 1179A (collectively, the "Annuities"), from MetLife.

Paragraph 3.3(B) of the Annuities states, "[i]f both the Annuitant and the survivor annuitant are alive on the Annuity Commencement Date, the Annuitant will not have the right to change the survivor annuitant for any reason." (Group Annuity Contract 10438 at ¶ 3.3(B), attached as Ex. B to the Dolan Decl.) However, ¶ 4.5 of the Annuities states that, "[i]n the case of any annuity that has a provision for payment to a beneficiary, the designation of beneficiary may be changed by filing written notice of the change with Metropolitan on an appropriate form." (*Id.* at ¶ 4.5.) Additionally, the Annuities also state that MetLife will:

> honor any valid court order relating to the provision of child support, alimony payments, or marital property rights to a Spouse, former Spouse, child or other dependant of an Annuitant covered under this Contract if such order does not require payments under a form of benefit not otherwise available under this contract nor increase the present value of the benefit payable under the Contract.

(*Id.* at ¶ 3.19.)

Paul Hallingby and Harrison were divorced by judgment filed on June 10, 1994. In connection with the divorce, they entered into a settlement agreement dated May 5, 1994 (the "Agreement"), which provides that:

> [o]ther than as set forth in this Agreement, the parties acknowledge that they have no right, title or interest in any of the bank accounts, securities, pension plans, retirement plans, profit sharing plans, annuities or IRAs now in the name of the other, whether in the other's sole name or jointly or in trust for another.

(The Agreement at Article II(2), attached as Ex. C to the Dolan Decl.)

On November 17, 1994, Paul Hallingby married Hallingby, and subsequently submitted change of beneficiary forms to MetLife, which revoked all previous beneficiary designations, and named Hallingby as the new beneficiary. Paul Hallingby died on June 1, 2005, prior to which he had been receiving monthly payments under the annuities. Paul Hallingby's estate (the "Estate") requested that MetLife pay the monthly beneficiary annuity payments to the Estate. MetLife declined to do so and began making the payments to Harrison, having determine that it, "must pay the Benefits in accordance with the terms of the Annuities and the Employee Retirement Income Security Act of 1974 ("ERISA")." (MetLife Ans. at ¶ 19.) On May 2, 2006, the Estate sent Harrison certified letters demanding that she comply with the Agreement, and pay over to the Estate all of the payments on the Annuities that she had received or may thereafter receive until MetLife began making the payments to Hallingby. Harrison declined to do so, and Hallingby brought this lawsuit to enforce the Agreement.

## II.  *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most

favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994). When deciding cross-motions for summary judgment, the standard to be applied "is the same as that for individual summary judgment motions and a court must consider each motion independent of the other." *Schultz v. Stoner*, 308 F.Supp.2d 289, 298 (S.D.N.Y.2004).

### III. *DISCUSSION*

#### A. *GOVERNING LAW*

■ Hallingby argues that ERISA does not apply to the instant case. Specifically she contends that the Annuities are private contracts between MetLife and the former participants of the Merrill Lynch Plan, and as with any other private contract, disputes concerning the terms of the agreement are governed by state law. Harrison maintains that under 29 U.S.C. § 1002, ERISA applies broadly to "any plan, fund or program … established or maintained by an employer" that "provides retirement income to employees." According to Harrison, the Annuities clearly fall within the scope of this definition, as they were established by Paul Hallingby's employer, Merrill Lynch, in order to provide employee retirement income.

Hallingby relies on two cases to support her argument that ERISA does not govern the dispute. Those cases, however, can easily be distinguished from the facts at hand. First, Hallingby cites *Bank of New York v. Janowick* for the proposition that when a pension plan has terminated and a party seeks a declaration of rights to proceeds under a resulting annuity contract, it is "the terms of the annuity contract and state law that govern." 470 F.3d 264, 269 (6th Cir.2006). The holding in *Janowick*, however, is much more limited, as the entire sentence reads:

> The Department of Labor ("DOL") has concluded that, in disputes over demutualization proceeds born from an annuity contract purchased to terminate an ERISA plan, the terms of the annuity contract and state law govern.

*Id.* The case at hand is not a dispute over demutualization proceeds, and courts have not applied such reasoning to analogous cases. Therefore, Hallingby's reliance on *Janowick* is not persuasive.

Hallingby also relies on *Pension Plan for Employees of Battenfeld Grease & Oil Corp. v. Principal Mut. Life Ins. Co.* for the proposition that, even where the pension plan still exists, but is funded by annuity contracts, state law, and not ERISA, governs. *See* 62 F.Supp.2d 1055 (W.D.N.Y.1999). In *Battenfeld Grease*, the plaintiff was a pension plan suing the insurance company that had provided the annuity contracts used to fund the pension plan. The court held that "the breach of contract claim here is entirely independent of the ERISA pension plan" because "those contracts are not the pension plans." *Id.* at 1060. However, *Battenfeld Grease* specifically stated that the matter would be different if the issue involved the benefits due to plan participants. *See id.*

("The breach alleged here refers to the valuation of the assets under the contracts at the time of their transfer to another insurance company, not the benefits due to plan participants."). In this case, the Annuity contracts at issue do constitute the pension plan, and the dispute does involve benefits due to plan participants. Accordingly, ERISA applies, and not New York State law.

Section 514 of ERISA provides that the statute's provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" (the "Preemption Clause"). 29 U.S.C. § 1144(a). A law "relates to" an employee benefit plan, "in the normal sense of the word, if it has a connection with or reference to such a plan." *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir.1989). The Preemption Clause is not limited to state laws specifically designed to affect employee benefit plans. *See Toussaint v. JJ Weiser & Co.*, No. 04 Civ. 2592, 2005 WL 356834, at *12 (*citing Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). A state law of general application, with only an indirect effect on an ERISA-governed plan, may nevertheless be considered to "relate to" that plan for preemption purposes. *See Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 9 (2d Cir. 1992). State laws that provide an alternative cause of action to collect benefits protected by ERISA are among those laws that are preempted. *See Borges*, 869 F.2d at 146. ERISA's civil enforcement remedies are intended to be exclusive remedies for enforcing rights in ERISA-governed plans. *See Pilot Life*, 481 U.S. at 52, 107 S.Ct. 1549. Thus, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200,

209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *see also Reichelt v. Emhart Corp.*, 921 F.2d 425, 431 (2d Cir.1990). ERISA therefore preempts state law causes of action that aim "to recover benefits due to [the plaintiff under the terms of the] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Lupo v. Human Affairs, Int'l, Inc.*, 28 F.3d 269, 272 (2d Cir.1994).

Accordingly, this Court must look to ERISA, rather than to New York State law, to determine the proper recipient of the beneficiary annuity at issue here.

## B. ENFORCEABILITY OF A WAIVER OF BENEFITS

Harrison argues that even if the Agreement can be construed as a waiver of her rights to the annuity benefits, ERISA precludes enforcement of the waiver, because under the terms of the Annuities, once Paul Hallingby retired, the designation of the surviving annuitant was irrevocable. Hallingby counters that (1) the Annuities allow for such a waiver, and it would therefore not be precluded by ERISA, and (2) the waiver would not be barred by ERISA's anti-alienation provision, because a waiver is fundamentally different from an assignment.

The Third Circuit, in *McGowan v. NJR Serv. Corp.*, addressed this issue with facts remarkably similar to the instant case. *See* 423 F.3d 241 (3d Cir.2005). While McGowan was married to his second wife, he named her as the beneficiary of the survivor annuity of his retirement plan, retired, and began receiving his retirement benefits. They later divorced, and in the settlement agreement, McGowan's second wife waived all rights to her interest in his pension benefits. McGowan subsequently tried to change the beneficiary of the survivor annuity, and was informed by the

pension plan that he was not allowed to change the beneficiary once he had started receiving retirement benefits. McGowan brought an action against the pension plan for refusing to recognize the nomination of a new beneficiary. The *McGowan* Court supported the pension plan's decision denying the waiver of pension benefits because (1) ERISA requires pension plans to be administered in accordance with plan documents on file and (2) allowing such a waiver would violate ERISA's anti-alienation provision. *Id.* at 245–50 (*citing* 29 U.S.C. §§ 1104(a)(1)(D) ("§ 1104") and 1056(d)(1) ("§ 1056")). For the reasons stated below, this Court agrees, and finds that enforcing the waiver in the instant action would be contrary to the relevant ERISA provisions.

1. *ERISA's Requirement That Plans Be Administered in Accordance with Plan Documents*

■ Section 1104 requires plans to be administered "in accordance with the documents and instruments governing the plan." As noted in *McGowan*, there is a Circuit split regarding whether administrators of an ERISA plan are required to recognize a beneficiary's waiver of his or her benefits in external documents. *Id.* at 244. The majority of Circuits have looked to federal common law to hold that such waivers are valid under certain circumstances, but the minority view is that plan administrators need not look beyond the documents on file with the plan to determine whether there has been a valid waiver effectuated in outside private documents. *See id.* (*citing Altobelli v. International Bus. Mach. Corp.,* 77 F.3d 78 (4th Cir.1996) (majority view); *Mohamed v. Kerr,* 53 F.3d 911 (8th Cir.1995) (majority view); *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321 (5th Cir.1994) (majority view); *Metropolitan Life Ins. Co. v. Hanslip,* 939 F.2d 904 (10th Cir.1991) (majority view); *Fox Valley & Vicinity Constr.*

*Workers Pension Fund v. Brown,* 897 F.2d 275 (7th Cir.1990) (en banc) (majority view); *Krishna v. Colgate Palmolive Co.,* 7 F.3d 11 (2d Cir.1993) (minority view); *McMillan v. Parrott,* 913 F.2d 310 (6th Cir.1990) (minority view)). As noted, the Second Circuit adheres to the minority rule. *See id.* (*citing Krishna,* 7 F.3d at 16 (2d Cir.1993) ("It would be counterproductive to compel the Policy administrator to look beyond designations [in plan documents] into varying state laws regarding wills, trusts and estates, or domestic relations to determine the proper beneficiaries of Policy distributions.")) In the instant case, requiring plan administrators to look beyond the plan documents to marital property settlements to determine a beneficiary of a survivor annuity would be inconsistent with the clear directives of § 1104 and the Second Circuit's decision in *Krishna.*

In *TWU–NYC Private Bus Lines Pension Trust v. Adams,* a court in this District held that, where the provisions of the plan clearly indicate that the designated joint survivor annuitant could not be changed once the participant retired, enforcing a waiver in a marital settlement agreement would violate the requirements of § 1104. *See* No. 99 Civ. 10784, 2003 WL 22383288, at *3 (S.D.N.Y. Oct. 17, 2003). "Unless a pension plan provides otherwise, once a participant retires, the designation of surviving annuitant is irrevocable even if the named annuitant waives all rights to the annuity." *Id.* (*citing Anderson v. Marshall,* 856 F.Supp. 604 (D.Kan.1994)); *see also Oglesby v. AT & T Corp.,* 527 F.Supp.2d 528 (N.D.Tex. 2006), *aff'd,* 257 Fed.Appx. 770 (5th Cir. 2007) (holding that a waiver would not be enforceable where the participant has retired, and the pension plan clearly states that beneficiary election is irrevocable upon retirement).

Hallingby attempts to differentiate the instant case from *TWU–NYC* by arguing that enforcing such a waiver would not run afoul of § 1104 because the Annuities do "provide otherwise." She points to two provisions in the Annuities to support her contention: (1) ¶ 3.19, under which Met-Life will honor any valid court order relating to the provision of marital property rights, and (2) ¶ 4.5, which states that the designation of a beneficiary may be changed by filing written notice of the change with MetLife on the appropriate form. However, those provisions must be read in the context of the Annuities as a whole. First, ¶ 4.5 must be read in conjunction with ¶ 3.3B, which states that if the beneficiary and participant are both alive on the participant's retirement date, "the Annuitant will not have the right to change the survivor annuitant for any reason." The only way to give effect to both of these provisions is to interpret ¶ 4.5 to apply only before a participant reaches his or her retirement date. Additionally, ¶ 3.19 states that a court order will be enforced only if it "does not require payments under a form of benefit not otherwise available under this Contract." In this case, allowing the change in beneficiary pursuant to the Agreement would require payment of a benefit not allowed under the Annuities. Therefore, Hallingby cannot rely on ¶ 4.5 to support her claim that enforcing the waiver would not violate § 1104 by administering the plan contrary to plan documents. Thus, Hallingby's attempts to distinguish this case from *TWU–NYC* are unavailing.

Finally, Hallingby argues that policy considerations relied upon in *TWU–NYC*, *i.e.*, that the irrevocable election provision was intended to prevent the manipulation of disbursements through the designation of a younger beneficiary, are not applicable here. Specifically, she points out that the present value of the Annuities would remain unchanged, because the payments would continue for the duration of Harrison's life, even though they would be paid to Hallingby. *See* 2003 WL 22383288, at *4. Be that as it may, the plan documents do not provide for such a result, and as previously stated, ERISA requires that the plan be administered in accordance with the plan documents.

### 2. *ERISA's Anti–Alienation Provision*

■ ERISA requires that a pension plan prohibit the assignment or alienation of benefits (the "anti-alienation provision"). *See* 29 U.S.C. § 1056(d)(1). Hallingby argues that a waiver is fundamentally different than an assignment or alienation of benefits, because a waiver is a simple refusal to accept benefits, whereas an assignment or alienation is a specific assertion that the beneficiary would like the benefits paid to someone else designated by the beneficiary. Harrison contends that the waiver could have been effectuated only through a Qualified Domestic Relations Order ("QDRO"), the one exception to ERISA's anti-alienation provision, and both sides agree that the Agreement is not a QDRO.

Circuits have split on whether ERISA's anti-alienation provision applies only to participants in an ERISA plan, or whether it also extends to non-participant beneficiaries. *See, e.g., Fox Valley*, 897 F.2d at 280 (7th Cir.1990) (holding that a proper waiver of interest by a nonparticipant in a plan is not preempted by ERISA's anti-alienation provisions); *Altobelli*, 77 F.3d at 81 (4th Cir.1996) (holding that the anti-alienation clause does not apply to a beneficiary's waiver); *McGowan*, 423 F.3d at 248–49 (stating that recognizing waivers would undermine ERISA's anti-alienation provision and that a QDRO is the only exception to the provision). The Second Circuit has not addressed whether ERISA's anti-

alienation provision would apply to waivers by non-participant beneficiaries.

In *Fox Valley*, the Seventh Circuit asserted that the QDRO procedures need not be followed to effectuate a waiver by a non-participant beneficiary, because "the spendthrift provisions of ERISA are designed to ensure that the employee's accrued benefits are actually available for retirement purposes, by preventing unwise assignment or alienation," and "[t]hese provisions focus on the assignment or alienation of benefits by a participant, not the waiver of a right to payment of benefits made by a designated beneficiary." 897 F.2d at 279.

In holding that the anti-alienation provision prohibited waivers by non-participant beneficiaries, the *McGowan* Court acknowledged that, as a general matter, a waiver is not the same thing as an assignment or alienation, but that within the ERISA context, the Supreme Court had used a broader regulatory definition of alienation or assignment. *See* 423 F.3d at 248–49 (*citing Boggs v. Boggs*, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997)). In *Boggs*, the Supreme Court defined an "assignment or alienation" to include "[a]ny direct or *indirect* arrangement whereby a party acquires from a participant or beneficiary" an interest enforceable against a plan to "all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary." 520 U.S. at 851, 117 S.Ct. 1754 (*quoting* 26 C.F.R. § 1.401(a)–13(c)(1)(ii) (1997)) (emphasis added). The *McGowan* Court also agreed with Judge Easterbrook's dissent in *Fox Valley* in that "a 'waiver' in the ERISA context is not merely a refusal of benefits, but functions as an 'anticipatory gift to whoever is next in line under the Plan's rules.'" 423 F.3d at 249 (*quoting Fox Valley*, 897 F.2d at 282–83 (Easterbrook, J., dissenting)). *McGowan* also cites *Boggs* for the proposition that

the existence of the QDRO exception "'gives rise to the strong implication that' the designation of alternative payees under other circumstances (i.e., through waivers) is 'not consistent with the statutory scheme.'" 423 F.3d at 249 (*quoting Boggs*, 520 U.S. at 847–48, 117 S.Ct. 1754).

While *Fox Valley* found ERISA's silence as to waivers by a non-participant spouses to allow the enforcement of a waiver pursuant to a marital property settlement, the Supreme Court in *Boggs* stated, "ERISA's silence with respect to the right of a non-participant spouse to control pension plan benefits by testamentary transfer provides powerful support for the conclusion that the right does not exist." 520 U.S. at 847–48, 117 S.Ct. 1754.

■■■ This Court finds that the broad definition of "assignment or alienation" as enunciated by the Supreme Court in *Boggs*, combined with the presumed Congressional intent in creating the QDRO exception to the anti-alienation provision, supports a conclusion that the anti-alienation provision of ERISA precludes enforcement of a waiver of a vested interest by a non-participant beneficiary.

## C. *HARRISON'S WAIVER IN THE AGREEMENT*

Because the Court has determined that a waiver would be unenforceable under both the terms of the Annuities and under ERISA's anti-alienation provision, it need not address whether Harrison actually waived her rights to the Annuities in the Agreement.

## IV. *ORDER*

**ORDERED** that the motion for summary judgment of plaintiff Jo Davis Hallingby (Docket No. 23) herein is DENIED; and it is further

**ORDERED** that the motion for summary judgment of defendant Mai V. Hallingby (Docket No. 27) herein is GRANTED.

The Clerk of Court is directed to close the case.

**SO ORDERED.**