08-1866-cv
Hallingby v.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2008

(Argued: April 21, 2009
 Final briefs submitted:
  April 28, 2009                    Decided:  July 24, 2009)

Docket No. 08-1866-cv

---

JO DAVIS HALLINGBY, as Executrix of the Estate of
Paul Hallingby, Jr.,

                              Plaintiff-Appellant,

                         - v. -

MAI V. HALLINGBY, now known as Mai V. Harrison,

                              Defendant-Appellee,

METROPOLITAN LIFE INSURANCE COMPANY,

                              Defendant.

---

Before:  KEARSE, SACK, and HALL, Circuit Judges.

        Appeal from a judgment of the United States District Court for the Southern District of New York, Victor Marrero, Judge, dismissing action to enforce divorce settlement provision for waiver of spouse-survivor benefits, ruling that the waiver was forbidden by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. See 541 F.Supp.2d 591 (2008).

        Vacated and remanded for adjudication under state law.

RICHARD H. DOLAN, New York, New York (Schlam Stone & Dolan, New York, New York, on the brief), for Plaintiff-Appellant.

JAMES G. McCARNEY, New York, New York (Thomas E. Engel, Katherine B. Thornburgh, Howrey, New York, New York, on the brief), for Defendant-Appellee.

KEARSE, Circuit Judge:

Plaintiff Jo Davis Hallingby ("plaintiff"), as executrix of the estate ("Estate") of her late husband Paul Hallingby, Jr. ("Hallingby"), appeals from a final judgment of the United States District Court for the Southern District of New York, Victor Marrero, Judge, dismissing her complaint against defendant Mai V. Hallingby, Hallingby's former wife who is now known as Mai V. Harrison ("Harrison"), for enforcement of a provision of the divorce settlement between Hallingby and Harrison by which Harrison is alleged to have waived her entitlement to survivor benefits under Hallingby's annuities. The district court granted summary judgment dismissing the complaint on the ground that plaintiff's claims are foreclosed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. On appeal, plaintiff contends that New York State law, rather than ERISA, governs and that under state law Harrison's waiver is enforceable. For the reasons that follow, we conclude that plaintiff's claims are not governed by ERISA, and we remand for adjudication of her claims under state law.

- 2 -

# I. BACKGROUND

## A. Hallingby's Marriages, Divorce, and Pension Benefits

The events are largely undisputed. Harrison and Hallingby were married in 1983. At that time, Hallingby was a participant in the pension plan ("Plan") for employees of Merrill Lynch & Co., Inc. and Affiliates ("Merrill Lynch"). Under the Plan, Hallingby was to receive a monthly pension following his retirement; after his death, the pension would continue to be paid to his survivor beneficiary at a reduced rate. In 1984 and 1986, Hallingby named Harrison as his beneficiary. Hallingby retired from Merrill Lynch on October 1, 1986, at which time his benefits, and those of his beneficiary, vested.

In December 1988, the Plan was terminated. In order to satisfy its obligations to its employees, as required by ERISA, see 29 U.S.C. § 1341(b)(3)(A)(i); 29 C.F.R. § 4001.2, Merrill Lynch purchased group annuity ("Annuity") contracts from defendant Metropolitan Life Insurance Company ("MetLife"). These contracts provided that "[i]n the case of any annuity that has provision for payment to a beneficiary, the designation of beneficiary may be changed by filing written notice of the change with Metropolitan on an appropriate form" (Annuity ¶ 4.5); that "[i]f both the Annuitant and the survivor annuitant are alive on the Annuity Commencement Date, the Annuitant will not have the right to change the survivor annuitant for any reason" (id. ¶ 3.3(B)); but that MetLife "will honor any valid court order relating to . . .

marital property rights to a Spouse . . . or other dependent of an Annuitant covered under this Contract if such order does not require payments under a form of benefit not otherwise available under this Contract nor increase the present value of the benefit payable" (id. ¶ 3.19).

In June 1994, Harrison and Hallingby were divorced. They had entered into a settlement agreement that provided, inter alia, that "the parties acknowledge that they have no right, title or interest in any of the bank accounts, securities, pension plans, retirement plans, profit sharing plans, annuities or IRAs now in the name of the other, whether in the other's sole name or jointly or in trust for another." (Settlement Agreement between Paul Hallingby, Jr., and Mai V. Hallingby dated May 5, 1994 ("Settlement Agreement"), art. II., ¶ 2 (emphases added).) The judgment granting Hallingby the divorce incorporated the parties' Settlement Agreement and provided that the court "retains jurisdiction in this matter concurrently with the Family Court, for the purpose of specifically enforcing such of the provisions of that agreement as are capable of specific performance." Hallingby v. Hallingby, No. 300913/93 (Sup. Ct. N.Y. Co. June 7, 1994), Judgment of Divorce at 3.

In November 1994, Hallingby married plaintiff and submitted forms to MetLife designating plaintiff as his new survivor beneficiary and revoking all previous beneficiary designations. Hallingby died in June 2005. Thereafter, despite requests by plaintiff that MetLife pay Hallingby's survivor

- 4 -

benefits to his Estate, MetLife made the Annuity payments to Harrison. MetLife took the position that ERISA and the terms of the Annuities required it to make the payments to Harrison.

B. Proceedings in the State and District Courts

After unsuccessful requests to Harrison that she cease claiming the right to receive survivor benefits under Hallingby's Annuities and that she pay over to the Estate the benefits she had received, plaintiff, by order to show cause, commenced the present action in New York State Supreme Court in May 2006. She sought enforcement of Harrison's Settlement Agreement waiver of any interest in Hallingby's pension benefits, as well as disgorgement of the Annuity payments Harrison had received from MetLife since Hallingby's death. Plaintiff also sought an order bringing MetLife into the action and requiring it to make all further payments of survivor benefits to Hallingby's Estate.

After MetLife was made a defendant, it removed the action to federal court, contending that the issue of entitlement to the Annuity benefits was governed by ERISA. Plaintiff filed a complaint alleging causes of action against Harrison for breach of contract and unjust enrichment and requesting, inter alia, declaratory and monetary relief against Harrison and an injunction directing MetLife to make the Annuity payments to Hallingby's Estate. Both defendants, in their answers to the complaint, asserted, inter alia, that plaintiff's claims were preempted by ERISA.

At pretrial conferences in 2007, MetLife informed the court that MetLife has no interest in the outcome of the dispute between plaintiff and Harrison and that MetLife will make the payments under the Annuities to whichever party the court determines should receive them. Following those representations, the action against MetLife was dismissed with prejudice.

Thereafter, both plaintiff and Harrison moved for summary judgment. Plaintiff contended principally that ERISA is inapplicable, arguing that the Annuities are private contracts between MetLife and the former participants in the Merrill Lynch Plan and that, like other typical annuity contracts, they are governed by state law. Harrison argued principally that because the beneficiary interests under the Plan vested on the date of Hallingby's retirement, and Harrison was then his spouse-survivor beneficiary, her interest had become non-assignable under the terms of the Annuities and irrevocable under the provisions of ERISA.

In an opinion dated March 26, 2008, reported at 541 F.Supp.2d 591, the district court denied plaintiff's motion for summary judgment and granted the motion of Harrison. The court found that "the Annuity contracts at issue . . . constitute the pension plan, and the dispute . . . involve[s] benefits due to plan participants." 541 F.Supp.2d at 596. Pointing out that ERISA preempts state-law causes of action to enforce rights under employee benefit plans that are covered by ERISA, the court concluded that it "must look to ERISA, rather than to New York

State law, to determine the proper recipient of the beneficiary annuity at issue here." Id. The court noted that "ERISA requires that a pension plan prohibit the assignment or alienation of benefits (the 'anti-alienation provision')," id. at 598 (citing 29 U.S.C. § 1056(d)(1)); and it therefore concluded that "the anti-alienation provision of ERISA precludes enforcement of a waiver of a vested interest by a non-participant beneficiary," id. at 599.

Judgment was entered dismissing the complaint, and this appeal followed.

## II. DISCUSSION

In their initial briefs on appeal, the parties have adhered to the positions they took in the district court. Harrison maintains that plaintiff's claims are preempted by ERISA's prohibition against alienation of her rights as a Plan beneficiary; plaintiff pursues her contention that the Estate's dispute with Harrison is governed solely by state law. Prior to oral argument, this Court instructed the parties to be prepared to address the applicability of ERISA, citing Beck v. Pace International Union, 127 S. Ct. 2310 (2007). At oral argument, we instructed the parties to submit supplemental briefs addressing the question of whether, if ERISA is inapplicable, federal subject matter jurisdiction existed.

Having reviewed all of the parties' submissions and arguments, we conclude that ERISA does not apply to the present dispute; that because MetLife had previously been dismissed from the case, diversity of citizenship existed at the time the final judgment was entered, and the district court then had jurisdiction; and that because ERISA is inapplicable, the matter should be remanded to the district court for adjudication of plaintiff's claims under state law.

A.   The Inapplicability of ERISA

ERISA generally applies to "any employee benefit plan if it is established or maintained" by an employer engaged in commerce and/or an employee organization representing employees engaged in commerce.   29 U.S.C. § 1003(a).   ERISA allows an employee benefit plan to be terminated, under stated conditions. See generally id. § 1341.   One method of plan termination is the "purchase [of] irrevocable commitments from an insurer to provide all benefit liabilities under the plan," id. § 1341(b)(3)(A)(i), i.e., the purchase of annuities.   See generally Beck, 127 S. Ct. at 2316-17.

When an employer terminates an employee benefit plan and provides for the payment of benefits by purchasing annuities in accordance with 29 U.S.C. § 1341(b)(3)(A)(i), the annuities and the benefits they provide are no longer covered by ERISA:

> [T]erminating a plan through purchase of annuities (like terminating through distribution of lump-sum payments) formally severs the applicability of ERISA to plan assets and employer obligations.   Upon

- 8 -

purchasing annuities, the employer is no longer subject to ERISA's multitudinous requirements, such as (to name just one) payment of insurance premiums to the [Pension Benefit Guaranty Corporation ("PBGC")], § 1307(a). And the PBGC is likewise no longer liable for the deficiency in the event that the plan becomes insolvent; there <u>are</u> no more benefits for it to guarantee. <u>The assets of the plan are wholly removed from the ERISA system, and plan participants and beneficiaries must rely primarily (if not exclusively) on state-contract remedies if they do not receive proper payments or are otherwise denied access to their funds</u>.

<u>Beck</u>, 127 S. Ct. at 2318 ("<u>are</u>" emphasized in original; other emphases added).

There is no contention here that Merrill Lynch failed to comply with the ERISA requirements for termination of the relevant Plan. Thus, the district court erred in ruling that "the Annuity contracts . . . <u>constitute</u> the pension plan," 541 F.Supp.2d at 596 (emphasis added). The purchase of the Annuities instead terminated the Plan; and termination "formally sever[ed] the applicability of ERISA." <u>Beck</u>, 127 S. Ct. at 2318. Plaintiff's claims that MetLife should have been, and should be, paying the surviving spouse benefits to plaintiff or to Hallingby's Estate, rather than to Harrison, are claims under the Annuities. The Annuities are not governed by ERISA, and plaintiff's claims must be resolved on the basis of state-law principles.

B. <u>Federal Subject Matter Jurisdiction</u>

Plaintiff commenced this action in state court. When MetLife became a defendant, it removed the case to the district court on the basis that the dispute was governed by ERISA, giving

- 9 -

the district court federal question jurisdiction. Since we have concluded that the dispute is governed instead by state law, there is no federal question, and there is an issue as to whether the suit may be entertained in federal court on the basis of diversity jurisdiction. Diversity jurisdiction exists over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "[C]itizens of different States" means that there must be complete diversity, i.e., that each plaintiff's citizenship must be different from the citizenship of each defendant. See, e.g., Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996); Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806). When this case was removed to the district court, complete diversity did not exist: Harrison was a citizen of Florida; but both plaintiff and MetLife were citizens of New York. (In oral argument and in their supplemental submissions, the parties informed us that Harrison remains a citizen of Florida and that plaintiff remains a citizen of New York.)

Although the existence of federal subject matter jurisdiction over an action removed from state court to federal court is normally to be determined as of the time of removal, see, e.g., Caterpillar, 519 U.S. at 68, it is now established that if a case was erroneously removed to federal court and a judgment was subsequently entered on the merits, the jurisdictional flaw that existed at the time of removal "is not fatal to the ensuing

- 10 -

adjudication if federal jurisdictional requirements are met at the time judgment is entered," id. at 64. Thus, "we view the critical issue to be whether the district court had subject matter jurisdiction at any time before it rendered judgment." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 301 (2d Cir. 2004).

In the present case, MetLife was dismissed from the case after it informed the parties and the court that it viewed itself as essentially only a stakeholder. Apparently having no interest in contending that Hallingby had no right under the Annuity contracts between himself and MetLife to change the designation of his survivor beneficiary as he did, MetLife represented that it will make the payments due under the Annuities to whichever party the court determines should receive them. Accordingly, prior to the district court's 2008 decision on the merits, MetLife was dismissed from the case, with prejudice. With MetLife gone, there was complete diversity. And as the complaint alleges that the estimated present value of the Annuities is $150,000, the prerequisites for diversity jurisdiction were met when MetLife was dismissed in 2007. Accordingly, the case is now properly in federal court.

## CONCLUSION

We have considered all of Harrison's arguments in support of the district court's resolution of the present case under ERISA

and have found them to be without merit. The judgment is vacated, and the matter is remanded to the district court for adjudication of plaintiff's claims in accordance with state law. Although plaintiff urges that this Court should rule that the Estate is entitled to judgment under state-law principles, we adhere to our normal practice of allowing the merits to be resolved by the district court in the first instance.

Costs to plaintiff.